06-5571-cr
United States v. Yannotti

S.D.N.Y.
Scheindlin, J.
04-cr-690

**UNITED STATES COURT OF APPEALS FOR THE**

**SECOND CIRCUIT**

August Term, 2007

(Argued:   December 20, 2007          Decided: September 4, 2008  )

Docket No. 06-5571-cr

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MICHAEL YANNOTTI,

*Defendant-Appellant*.

Before: KATZMANN, B.D. PARKER, and RAGGI, *Circuit Judges*.

Appeal from a judgment of conviction in the United States District Court for the Southern District of New York (Scheindlin, *J.*) for racketeering conspiracy.  *See* 18 U.S.C. § 1962(d).  Affirmed.

DIARMUID WHITE, White & White (Brendan White, *on the brief*), New York, N.Y., *for Defendant-Appellant*.

ELIE HONIG, Assistant United States Attorney (Katherine Polk Failla, *on the brief*), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, N.Y., *for Appellee*.

BARRINGTON D. PARKER, *Circuit Judge*:

Michael Yannotti appeals from a judgment of conviction in the United States District Court for the Southern District of New York (Scheindlin, *J.*). The jury convicted him of conspiring to engage in racketeering in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. *See* 18 U.S.C. § 1962(d). The district court sentenced Yannotti principally to 240 months' incarceration. Yannotti's appeal raises several issues. We consider whether one of the counts of conviction was time-barred, whether the district court properly admitted certain intercepted communications, and whether the evidence was sufficient to support his conviction for racketeering conspiracy. We also review the reasonableness of his sentence. We affirm.

## BACKGROUND

On July 21, 2004, the government indicted Yannotti and his co-defendants, John Gotti Jr. and Louis Mariani, alleging that they were members of the Gambino Crime Family,[1] a racketeering enterprise that engaged in, *inter alia*, extortion, extortionate extensions of credit, securities fraud, as well as violent conduct including murder.[2] Specifically, Yannotti was charged with a substantive count of racketeering in Count One and with participating in a RICO

---

[1] The indictment alleges that the Gambino Family operated through groups of individuals known as "crews." Each "crew" was headed by a "capo" or "captain," and consisted of "made" members who were also known as "soldiers."

[2] The jury failed to reach a verdict as to Gotti on three of the four counts naming him and acquitted him on one count. Following two subsequent mistrials, the government dismissed the remaining charges against him. Mariani was convicted on several counts. He was sentenced principally to 78 months' imprisonment.

conspiracy that existed from the mid 1990s through 2004 in Count Two. *See* 18 U.S.C. § 1962(c), (d). Count One specifically charged Yannotti with participation in four separate predicate acts: Racketeering Act One charged Yannotti with conspiring to kidnap, kidnaping and attempting to murder Curtis Sliwa; Act Two charged Yannotti with conspiring to murder and murdering Robert Arena, and murdering Thomas Marenga; Act Three charged Yannotti with attempting to murder Robert Tarantola and Act Seven charged Yannotti with loansharking, specifically conspiring to make and collect extortionate extensions of credit throughout the 1990s. The aforementioned predicate acts were incorporated by reference in Count Two, along with several other predicate acts, including securities fraud and extortion in the construction industry, allegedly committed by Yannotti's co-defendants in furtherance of the enterprise's affairs. Yannotti was also charged with murdering Arena and Marenga in aid of racketeering in Counts Nine and Ten.

The government's proof at trial included testimony from several members and associates of the Gambino Crime Family, as well as from law enforcement officers. These witnesses described Yannotti's criminal activities as an associate of Family member Nicholas Corozzo, whose crew was based in the Canarsie section of Brooklyn. In addition to Yannotti's loansharking activity, the government offered proof, primarily thorough Gambino Family associate Andrew DiDonato, that Yannotti was involved in the 1987 shooting of Robert Tarantola, an associate of the Colombo Crime Family, a rival criminal enterprise. Gambino Family captain Michael DiLeonardo and soldier Joseph D'Angelo testified about Yannotti's involvement in a 1992 conspiracy to abduct and murder Curtis Sliwa, a radio host and founder of the Guardian Angels, in retaliation for his public criticism of John Gotti, Sr., then head of the Gambino Family. Finally, DiDonato and DiLeonardo testified that in 1996, Yannotti shot Robert Arena and Thomas Marenga as a result of a conflict between Yannotti's crew and members of

3

the Lucchese Crime Family, a rival criminal enterprise. In addition to testimonial evidence, the government offered surveillance photographs, a beeper recovered at the scene of the Arena and Marenga murders, records indicating that the beeper belonging to Yannotti, recorded conversations between Yannotti and his loansharking customers, and additional loansharking records.

During trial, two evidentiary issues arose that figure in this appeal. The first concerned the admissibility of certain evidence secured as a result of a 1996 court authorized wiretap of a cellular phone used by Corozzo and his associates in Florida. The affidavit in support of the application averred that the phone was being used by Corozzo and "others yet unknown" in furtherance of a racketeering conspiracy that engaged in loansharking and money laundering, largely in New York. While the affidavit sought authorization to intercept conversations of Corozzo and several other named individuals, it did not identify Yannotti among the anticipated interceptees. It did, however, state that probable cause existed to suspect that "unknown others" used the phone while engaging in illegal activity.

On April 22, 1996, the day that the application was approved, Corozzo left the cell phone that was the subject of the application in Florida and returned to New York. The next day, the FBI intercepted its first phone call from Yannotti made on the target phone. The government's initial ten-day progress report to the judge supervising the wiretap described two phone calls made by Yannotti involving the collection of loansharking debts. The report explained that "Michael Yannotti will be identified as a named interceptee [on the wiretap application] if an extension affidavit is filed in this case." Finally, the government informed the judge that it believed that the phone would continue to be used by Yannotti, Corozzo, and unnamed others to discuss the offenses described in the initial authorizing order. The government never intercepted any phone calls from Corozzo or sought an extension of the wiretap, thus, Yannotti was never

4

formally named in the authorization. *See United States v. Yannotti*, 399 F. Supp. 2d 268, 270 (S.D.N.Y. 2005).

Before the start of the trial, Yannotti moved to suppress the two calls on the ground that the agents had exceeded their authority in continuing to intercept calls well after learning that Corozzo no longer possessed the phone. He argued that the agents were required to seek new authorization to intercept his conversations and that the continued interception converted the initial authorization into a general warrant proscribed by the Fourth Amendment. The district court disagreed, pointing to the fact that the initial order permitted the interception not only of Corozzo and others specifically named in the authorization, but also "others yet unknown", and consequently was not limited to the interception of calls placed by Corozzo himself. *Yannotti*, 399 F. Supp. 2d at 273. The court concluded that due to the easy mobility of cellular phones, the government was not required to seek a new authorization each time that a new person used the phone. Additionally, the government reasonably believed that the phone would continue to be used as an instrument of the charged conspiracy while in Yannotti's possession. *Id*. For these reasons, the court concluded that the scope of the warrant and the reasonableness of the government's conduct posed no constitutional problems.

The second evidentiary issue relevant to this appeal concerned the admissibility of certain lay opinion testimony and poses the question whether Andrew DiDonato, a government witness, was properly allowed to interpret the two intercepted conversations involving Yannotti. DiDonato first testified about his participation, and assistance to Yannotti, in the loansharking conspiracy. He then explained that individuals who received extortionate loans usually made weekly payments on the interest rather than on the principal and that the interest was usually termed "points" by those involved in loansharking. In response to the government's question about the meaning of a loansharking victim's statement to Yannotti that "I'm going to leave you

5

a two," DiDonato testified that it meant "200 dollars" in interest.  DiDonato also testified that the intercepted conversations consisted of Yannotti seeking to collect a debt from an individual who was "backed up on his payments."[3]  Over objection, the court admitted this testimony after

---

[3]    The conversation that DiDonato was asked to interpret is as follows:

> YANNOTTI:  Your [sic] way behind here.
>                     . . . . . .
> ANDY:        You got a calendar there?
>
> YANNOTTI:  Not on me, but, uh, look, Monday's gonna be six.
>
> ANDY:        Okay.
>
> YANNOTTI:  Altogether.  What does that look like to you?
>                     . . . . . .
>
> ANDY:        I'll call him by tomorrow and I'll get together with him, and uh . . . I'll see him . . .  I'll see him with six.
>
> YANNOTTI:  Alright, then you're good 'till for three weeks.  So three Monday's from now. . . . . . .
>
> ANDY:        And then that'll leave us with what? Four?
>
> YANNOTTI:  Two.          . . . . . .
>
> YANNOTTI:  This . . . this Monday coming up will be six.
>
> ANDY:        Okay.
>
> YANNOTTI:  Alright, so then you're fresh 'till, you know . . . .

At trial, the government asked DiDonato to describe what he had heard occur during the taped conversation:

> GOVERNMENT:     And when they're talking about getting calendars out, what is your understanding of what Michael Yannotti is telling this person named Drew or Andy?
>                           . . . . . .
>
> DIDONATO:            That he's backed up on his payments

6

determining that DiDonato acquired his understanding of the conversation through personal experience with loansharking. *See* Fed. R. Evid. 701.

At the conclusion of the government's case, Yannotti moved for a judgment of acquittal on Counts One and Two pursuant to Federal Rule of Criminal Procedure 29(a), arguing that the government had presented insufficient evidence of his guilt. Further, he asserted that there was insufficient proof that he had committed any predicate acts within the five-year statute of limitations period. Yannotti claimed that most of the predicate acts alleged violent conduct taking place in 1987, 1992, and 1996, all of which fell well outside of the statute of limitations. *See* 18 U.S.C. § 3282(a) ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed."). With respect to the loansharking conspiracy, which was alleged to have continued from 1993 to 2002, Yannotti argued that the evidence was insufficient to show either

| | |
|---|---|
| GOVERNMENT: | What do you base that on? |
| DIDONATO: | I base that on coming this week will be six, then based on the other information here that said, well, after this, after you pay the six you'll be starting off fresh, and looks like it's three weeks. So to me it looks like a $200 a week interval. |
| GOVERNMENT: | That is for the jury to determine. ........ |
| GOVERNMENT: | Are you familiar with that term that Yannotti used, so all right, then you're fresh, if you give him six now you're fresh until, you know. Do you know what that term fresh means used in this context? |
| DIDONATO: | Not that particular term per se, but to me it means he'll be even and won't own any back money and he'll be fresh to start again and start a new week off. |

7

(1) that he participated in the conspiracy or (2) that the conspiracy continued into the limitations period. The district court denied his motion.

The jury convicted Yannotti of engaging in the RICO conspiracy described in Count Two but could not reach a verdict on the substantive RICO count described in Count One. On its verdict sheet, the jury indicated that the government had proved that Yannotti conspired to engage in loansharking, but had not proven the other racketeering predicate acts – – the conspiracy to murder Arena, the murders of Arena and Marenga, or the attempted murder of Tarantola. With respect to the racketeering act charging Yannotti with conspiring to kidnap, kidnaping, and attempting to murder Curtis Sliwa, the jury found that the attempted murder was not proven, but could not agree on whether the government proved the alleged conspiracy to kidnap or Yannotti's involvement in the kidnaping. The jury also acquitted Yannotti of the two counts alleging violent conduct in aid of racketeering.

Following trial, the district court granted Yannotti's renewed motion under Rule 29(c) for a judgment of acquittal as to Count One. The court concluded that because there was insufficient evidence that Yannotti had participated in loansharking after 1999, the loansharking conspiracy – – the only predicate act for which Yannotti had been found guilty – – actually fell outside of the five-year statute of limitations.[4] *United States v. Yannotti*, 415 F. Supp. 2d 280, 289 (S.D.N.Y. 2005). The district court specifically found that the government had not proven that Yannotti was involved in any loansharking activity after 1996 given that "[t]here were no recorded conversations concerning loansharking after 1996, nor were any loansharking records found on Yannotti at any time after 1996. Furthermore, Yannotti's coconspirators . . . who, under the

---

[4] As the district court noted, it was undisputed by the parties that the other predicate acts alleged against Yannotti – – the conduct involving Arena, Marenga, Sliwa and Tarantola – – fell outside of the statute of limitations. *United States v. Yannotti*, 415 F. Supp. 2d 280, 284 (S.D.N.Y. 2005).

Government's own theory, provided Yannotti with loansharking money, were arrested in December 1996, and were incarcerated for many years thereafter." *Id.* at 288-89.

The government contended that the statute of limitations as to the substantive RICO conduct had not expired because it was entitled to a presumption that Yannotti's involvement in the charged conspiracy continued until he demonstrated his withdrawal from, or abandonment of, that conspiracy, citing *United States v. Spero*, 331 F.3d 57, 61 (2d Cir. 2003). The district court disagreed, finding that this presumption could not continue indefinitely and that the government failed to demonstrate that any of the conspirators engaged in loansharking on any date close to the limitations period. *Yannotti*, 415 F. Supp. 2d at 290. The court concluded that "[g]iven the facts presented here – – the length of the presumption, the proof that the co-conspirators in all likelihood could not have continued with their illegal activities, and the absence of proof regarding Yannotti's loansharking activities within the limitations period . . . – – the presumption alone is insufficient to sustain a conviction." *Id.* at 291. For these reasons, the district court dismissed Count One.[5]

However, the court denied Yannotti's Rule 29(c) motion as to Count Two charging him with participating in the RICO conspiracy. Yannotti argued that because the predicate acts alleged against him fell outside of the statute of limitations, the government could not claim that he timely participated in the conspiracy. The district court nevertheless determined that the evidence established that "the activities of the Gambino Organized Crime Family continued into the limitations period[,] . . . that Yannotti was a member of the conspiracy" and that there was no evidence that Yannotti withdrew from the conspiracy. *Id.* at 292 (citing *United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987) ("In order to convict a defendant of RICO conspiracy, only an

---

[5] Because the government does not appeal the dismissal of Count One, we do not review the district court's analysis of the legal insufficiency of the trial evidence as to this count.

9

agreement to commit two or more predicate acts, *rather than the acts themselves*, need be proven." (emphasis added))). The court found that the government had offered sufficient proof that certain activities furthering the goals of the RICO conspiracy, specifically the charged predicate acts of securities fraud and construction industry extortion by other members of the enterprise, continued through 2002 and that Yannotti was responsible for the conduct of his co-conspirators. *Id.* Thus, it held that Yannotti was not entitled to a judgment of acquittal despite not being charged himself with the actual commission of timely racketeering acts.

The district court sentenced Yannotti in November 2006 and concluded that conduct which the jury had not found proven by the government should, nevertheless, be considered in calculating his applicable Guidelines range. The court acknowledged that the jury was unable to reach a verdict on the charges surrounding the Sliwa assault and that it "was deeply split on the issue with seven jurors out of twelve believing that there was proof beyond a reasonable doubt." However, the court determined that because one of the prosecution's witnesses on this point was credible and corroborated by another, only slightly less credible, witness, Yannotti's participation in the attack on Sliwa was supported by a preponderance of the evidence. Thus, Yannotti's involvement in the Sliwa activity could be considered relevant conduct for sentencing purposes. Based on this finding, the court calculated Yannotti's offense level at 36 and his Criminal History Category at Level II, resulting in a Guidelines range of 210 to 262 months.[6] It then sentenced him to the statutory maximum of 240 months' imprisonment, noting that Yannotti had

_____

[6]    The district court calculated Yannotti's base offense level as 32 for the kidnaping of Sliwa pursuant to U.S.S.G. § 2A4.1(a). It then enhanced the offense determination by four levels pursuant to U.S.S.G. § 2A4.1(b)(2) because the victim sustained life threatening bodily injury. After determining that the kidnaping resulted in the higher offense level in comparison with the other criminal conduct, the district court concluded that the level 36 calculation should stand.

been a long-time associate of the Gambino Family and had engaged in extensive illegal and violent conduct in furtherance of that enterprise. This appeal followed.

**DISCUSSION**

Yannotti appeals his conviction and sentence on various grounds. He maintains principally that the evidence was not legally sufficient to establish his conviction for RICO conspiracy, the district court erred in admitting the contents of two intercepted phone calls and allowing a witness to interpret those phone calls, one of the racketeering acts alleged in the indictment was improperly vague, and the district court erred in rendering his sentence. We review *de novo* a challenge to the sufficiency of the evidence and "affirm if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt." *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004). A defendant challenging his conviction on the basis of the insufficiency of the evidence "bears a heavy burden." *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). Evidentiary rulings are reviewed for abuse of discretion. *United States v. Taubman*, 297 F.3d 161, 164 (2d Cir. 2002). A district court's factual findings are reviewed for clear error. *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005). The denial of a motion to dismiss the indictment is reviewed *de novo*. *United States v. Yousef*, 327 F.3d 56, 137 (2d Cir. 2003). Finally, we review a district court's sentence for its procedural and substantive reasonableness. *See Gall v. United* States, 128 S. Ct. 586, 594-97 (2007); *see also United States v. Rattoballi*, 452 F.3d 127, 131-32 (2d Cir. 2006).

I.

Yannotti first contends that the evidence supporting his conviction for participating in a RICO conspiracy was legally insufficient. He asserts that he was not a member of the charged RICO conspiracy which, he maintains, was defined by the pattern of racketeering alleged in the

11

indictment. Because there was no evidence that Yannotti engaged in the two timely acts of racketeering found proved by the jury – – securities or construction industry fraud[7] – – and because the sole racketeering act committed by him – – loansharking – – fell outside the statute of limitations, Yannotti maintains that the district court erred in sustaining his RICO conspiracy conviction. He complains that, as support for its denial of his Rule 29(c) motion as to Count Two, the district court improperly treated his alleged membership in the criminal enterprise – – the Gambino Family – – as equivalent to membership in the charged conspiracy. Because the RICO conspiracy was limited to specific predicate acts and involved conduct committed by Gambino Family members to further their self-interests rather than the affairs "of any cohesive Gambino family enterprise," Yannotti argues that he should not be held liable for the acts of his co-conspirators.

The government renews its argument that it is entitled to the presumption, first articulated in *United States v. Spero*, that once the existence of the RICO conspiracy and Yannotti's membership in that conspiracy were established, Yannotti's involvement continued until he proved that he either withdrew from the conspiracy or it terminated. *See Spero*, 331 F.3d at 61. Additionally, the government maintains that even if we do not apply the *Spero* presumption, the evidence established that Yannotti participated in numerous racketeering activities attributable to the enterprise and any lack of Yannotti's involvement in the timely predicate acts alleged against his co-conspirators is not dispositive of his connection to the conspiracy.

In assessing Yannotti's sufficiency challenge, we are guided by precedent that undermines Yannotti's core argument that his conviction for RICO conspiracy cannot stand

---

[7] It is uncontested that this conduct occurred within the limitations period.

absent proof of his personal involvement in a timely charged predicate act. We discuss this precedent at the outset.

In *United States v. Persico*, we emphasized that "the agreement proscribed by section 1962(d) is [a] conspiracy to participate in a charged enterprise's affairs, not [a] conspiracy to commit predicate acts." 832 F.2d at 713. To establish a RICO conspiracy, the government must prove that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity. However, in *Salinas v. United States*, 522 U.S. 52 (1997), the Supreme Court made clear that to establish this pattern, the government need not prove that the defendant himself agreed that he would commit two or more predicate acts. *See id*. at 64 (noting that, although the RICO statute "broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove [that] each conspirator agreed that he would be the one to commit two predicate acts"). Indeed, *Salinas* held that to be found guilty of RICO conspiracy, a defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme. *See id.* at 63; *see also United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) (stating that "a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts . . . to be found guilty of the racketeering conspiracy, for it suffices that he adopt[] the goal of furthering or facilitating the criminal endeavor" (internal citations and quotations marks omitted)).

It is well-settled that a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside of the scope of the illegal agreement. "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same

13

criminal objective and may divide up the work, yet each is responsible for the acts of each other."

*Salinas*, 522 U.S. at 63-64 (internal citation omitted); *see also United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000) (holding that "no rule" requires "the government to prove that a [RICO] conspirator knew of all criminal acts by insiders in furtherance of the conspiracy" as long as it shows that defendant possessed knowledge of "the general contours of the conspiracy"); *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989) (stating that a defendant may agree to join a RICO conspiracy without knowing the identities of "all the other conspirators" and without "full knowledge of all the details of the conspiracy").

With this precedent in mind, we reject Yannotti's argument that the evidence was insufficient to prove his participation in the charged RICO conspiracy. The government's proof convincingly established that the Gambino Crime Family was an enterprise whose members routinely conducted its affairs through a nearly limitless range of racketeering activities, including kidnaping, extortion, loansharking, and fraud. Yannotti does not dispute his membership in the Gambino Family. Rather, he asserts that the government's proof of his mid-1990s involvement in loansharking on behalf of the Gambino Family was insufficient to prove his agreement to the broader pattern of racketeering. The evidence, viewed in the light most favorable to the government, supports a different conclusion.

Specifically, the evidence showed that Yannotti was formally inducted as a "soldier" into the Gambino Crime Family at a ceremony in which inductees pledged themselves to use *any* means necessary to further the objectives of the Family. A reasonable jury could certainly conclude that when Yannotti agreed to participate in the affairs of the Gambino Family, he was by no means limiting that participation to his own loansharking. Instead, it could have found that Yannotti had agreed that he, and others, would engage in a jointly undertaken pattern of racketeering activities reaching all of the predicates established by the government. Thus, the

14

fact that the government did not prove Yannotti's specific knowledge of or participation in each predicate act conducted by other members of the Gambino Family does not undermine the sufficiency of the evidence establishing his conviction as to the charged RICO conspiracy. *See Salinas*, 522 U.S. at 63-64; *see also Ciccone*, 312 F.3d at 542; *Zichettello*, 208 F.2d at 99-100.

To the extent Yannotti maintains that, even if the government proved his involvement in the charged conspiracy, the statute of limitations required proof of his specific agreement to commit predicate acts within five years of indictment, he conflates our precedent with respect to substantive RICO and RICO conspiracy. Although a "substantive RICO charge is barred by limitations as to any defendant unless *that defendant* committed a predicate act within the five-year limitations period," a RICO conspiracy "is complete, thus commencing the running of the five-year statute of limitations, only when the purposes of the conspiracy have either been accomplished or abandoned." *United States v. Salerno*, 868 F.2d 524, 534 (2d Cir. 1989) (emphasis in original). Accordingly, even if a defendant engaged in predicate conduct that occurred outside of the statute of limitations, that defendant remains liable for RICO conspiracy unless the evidence shows that the conspiracy concluded or he withdrew from that conspiracy more than five years before the indictment. *See id.*; *Persico*, 832 F.2d at 713. This is because once the government meets its burden of proof to establish a RICO conspiracy, "it is entitled to a presumption that the conspiracy continued until [the] defendant demonstrate[s] otherwise." *United States v. Spero*, 331 F.3d at 61.

Yannotti relies on our dicta in a footnote in *United States v. Bruno*, 383 F.3d 65 (2d Cir. 2004) to suggest that *Spero* does not control because his association with the Gambino Family, standing alone, is insufficient to toll the statute of limitations. In *Bruno*, we did not reach the issue of "what implications a defendant's continued membership in an ongoing organized crime family may have on the statute of limitations for a RICO conspiracy charge." *Id*. at 81 n.10.

15

*Bruno* involved a count charging the defendant with a substantive RICO violation in which four of the five racketeering acts were committed outside of the limitations period and the defendants' conviction under the only timely act was unsupported by the evidence. *Id*. at 81. Here, however, the securities fraud and construction extortion conspiracies established the charged RICO conspiracy's continuation well into the limitations period, and Yannotti does not challenge the evidence proving those predicates. Further, for the reasons just discussed, the evidence permitted a reasonable jury to conclude that these timely predicate acts by co-conspirators fell within the broad pattern of racketeering activity through which Yannotti agreed that he and others would conduct the affairs of the enterprise. Under these circumstances, and in the absence of any evidence of Yannotti's timely withdrawal, we conclude that the statute of limitations does not preclude Yannotti's conviction for RICO conspiracy.

II.

Yannotti also complains that the district court improperly admitted his phone conversations because the government's original wiretap application did not specifically name him as a target. As previously noted, although the government was authorized to intercept communications on a cell phone belonging to Corozzo, that authorization did not specifically identify Yannotti. The government intercepted two calls in which Yannotti discussed his loansharking activities. Yannotti maintains that this evidence, which he argued was inadmissible, served as the government's sole proof connecting him to the predicate act alleging loansharking.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 provides for court-ordered interceptions of communications. 18 U.S.C. § 2518. The statute allows a court to authorize a wiretap "if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is

16

about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap." *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999). Intercepted communications are inadmissible if they were "unlawfully intercepted," intercepted pursuant to an authorization or approval that is "insufficient on its face," or intercepted not in conformity "with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." Because our role as an appeals court in reviewing the issuance of a wiretap order "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997) (internal quotation marks and brackets omitted) (alterations and omissions in original).

Given this deference, we find no error in the admission of the conversations. The affidavit in support of the application did not solely request the interception of communications made to and by Corozzo. Instead, it named Corozzo, six alleged associates and members of the Gambino family, and "others as yet unknown." In authorizing the interceptions, the court determined that probable cause existed to believe that not only Corozzo, but also other unnamed targets, would use the cellular phone to engage in illegal activities. The government is not required to specify in the application each individual whose conversations may be intercepted. Where, as here, the government is investigating numerous members of an extensive criminal conspiracy, the government may not be able to identify in advance each person who will use the phone for criminal purposes. In *United States v. Figueroa*, we held that "[a]t the outset of a wiretap, surveillance under an order that authorizes interception of calls of 'others as yet unknown' is not strictly limited to only those who are specifically named in the authorizing order

17

either as probable violators or as possible interceptees."; Instead, "[t]he agents are required only to make reasonable efforts to minimize their interceptions in light of all the relevant circumstances." 757 F.2d 466, 473 (2d Cir. 1985). Here, the order limited interception to conversations which addressed conspiratorial activities and terminated "upon the attainment of authorized objectives" or at the end of the thirty days; thus, it did not, as Yannotti avers, give the government unfettered discretion to intercept phone calls unrelated to the alleged conspiracy. Moreover, the order also required the government to submit regular reports to the supervising judge "showing what progress has been made toward achievement of the authorized objectives and the need for continued interception." These restrictions were adequate safeguards that foreclosed the possibility that the order could be transformed into a general warrant.

Additionally, the government had no reason to believe that Yannotti would indefinitely maintain possession of the cell phone. Consequently, it acted reasonably in suspecting that Corozzo would return to Florida and re-claim his phone. Regardless, as the government stated in its progress report, it suspected that Yannotti's intercepted conversation indicated that he had used the phone in furtherance of the criminal activity identified in the initial application. Thus, as the district court reasonably found, "although Corozzo no longer possessed the phone, there was probable cause to believe that it remained an instrumentality of the alleged conspiracy." *Yannotti*, 399 F. Supp. 2d at 273. Under these circumstances, we agree with the district court's conclusion that the government did not exceed the wiretap authorization in its continued interception of Yannotti's calls.

III.

Yannotti next asserts that Andrew DiDonato, a government witness, provided inadmissible opinion testimony which did not conform to the definition of lay testimony under Federal Rule of Evidence 701 because it was based on DiDonato's specialized knowledge as a

18

member of the Gambino Crime Family. DiDonato was allowed to testify about comments made by Yannotti during the two intercepted phone conversations. Yannotti complains that the government did not seek to admit this testimony as expert opinion testimony under Rule 702 and that he was not afforded the protections provided by Federal Rule of Criminal Procedure 16(a)(1)(G). The government, on the other hand, claims that DiDonato was not an expert as contemplated by Rule 702 because he acquired his particular knowledge about loansharking through experience as a member of the conspiracy, rather than through specialized study or training.

Under Rule 701, a lay witness' testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A rational perception is one involving "first-hand knowledge or observation." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992). The advisory note to the 2000 Amendments to Rule 701 provides that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an . . . expert. . . . Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701, advisory committee's note. In contrast under Rule 702, a witness purporting to offer expert opinion testimony must be first qualified to offer this testimony on the basis of his knowledge, skill, or education. Fed. R. Evid. 702.

Although Yannotti challenges the admissibility of DiDonato's testimony under Rule 701 only on the ground that it derived from specialized knowledge in contravention of the third

19

requirement under Rule 701, we conclude that DiDonato's testimony easily met both the first and second requirements under Rule 701, which are that the testimony be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *Id.*

First, DiDonato's testimony was rationally based on his own perception because it derived from his direct participation in the loansharking activities of the charged enterprise, not on participation in the loansharking activities of some unrelated criminal scheme.[8] Second, there is little question that DiDonato's testimony was helpful to the jury. As we have explained in another context, individuals engaging in illicit activities rarely describe their transactions in an open or transparent manner and the government may call witness*es* to provide insight into coded language through lay opinion testimony. *See United States v. Garcia*, 291 F.3d 127, 139 (2d Cir. 2002). The conversation between Yannotti and the individual identified by the government as "Andy" was cryptic and required interpretation. As discussed earlier, DiDonato explained that the individual collecting the debts informed the loansharking victim about the amount of the weekly interest by referring to a single number or "points." DiDonato stated that in the phone call with "Andy," Yannotti was seeking exorbitant amounts of interest at regular intervals ranging from two hundred to six hundred dollars. Given its discretion in such matters, the district court did not err in allowing DiDonato to provide interpretative testimony because the

---

[8]     This distinction applies equally to evaluating the admissibility of agent testimony. An undercover agent whose infiltration of a criminal scheme has afforded him particular perceptions of its methods of operation may offer helpful lay opinion testimony under Rule 701 even as to co-conspirators' actions that he did not witness directly. By contrast, an investigative agent who offers an opinion about the conduct or statements of conspirators based on his general knowledge of similar conduct learned through other investigations, review of intelligence reports, or other special training, does not meet the requirements of Rule 701 and must qualify as an expert pursuant to Rule 702. *See United States v. Garcia,* 413 F.3d 201, 216 (2d Cir. 2005).

20

"language on the tape [was] . . . punctuated with ambiguous references to events that are clear only to the conversants." *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988) (internal quotation marks and alterations omitted). Accordingly, we find that DiDonato's testimony met the requirements of Rule 701 and was properly admitted as lay opinion testimony.

Mindful of making explicit the requirements for lay witness testimony in comparison to expert testimony, we now conclude that where a witness derives his opinion solely from insider perceptions of a conspiracy of which he was a member, he may share his perspective as to aspects of the scheme about which he has gained knowledge as a lay witness subject to Rule 701, not as an expert subject to Rule 702. *See United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (concluding the district court did not abuse its discretion in allowing a lay witness to testify about an organization's fraudulent financial conduct where that witness made first-hand observations and was well aware of the organization's financial misstatements). No different conclusion is mandated by Rule 701's requirement that a lay opinion must be the product of "reasoning processes familiar to the average person in everyday life," and not "scientific, technical, or other specialized knowledge." *United States v. Garcia,* 413 F.3d 201, 216-17 (2d Cir. 2005). While we do not profess that loansharking is an activity about which the average person has knowledge, we find that the opinion DiDonato reached from his own loansharking experience derived from a reasoning process familiar to average persons. In short, his opinion did not depend on the sort of specialized training that scientific witnesses or statisticians rely upon when interpreting the results of their own experiments or investigations.

IV.

21

Yannotti renews his pre-trial claim that subparts (b) and (c) of Racketeering Act Seven of the indictment[9] – – charging him with financing extortionate extensions of credit and conspiring to make and collect extortionate extensions of credit – – violated Federal Rule of Criminal Procedure 7(c) because they did not contain sufficient factual allegations. He maintains that those portions of the racketeering act failed to allege sufficient facts and included overly broad temporal and geographic spans by describing conspiratorial conduct occurring in both the Southern and Eastern Districts of New York, and elsewhere with unnamed co-conspirators. The district court denied his motion to dismiss the racketeering act, citing language from *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) and concluded that the indictment adequately "track[ed] the language of the statute . . . and state[d] the time and place (in approximate terms) of the alleged crime."[10]

"An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). Moreover, "an indictment need do little more than to track the

---

[9]    The relevant portions of the indictment charged the following:
(b) Conspiracy to Make Extortionate Extensions of Credit: From in or about 1993, up through and including in or about 2002, in the Southern District of New York, the Eastern District of New York, and elsewhere, Michael Yannotti . . . and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to make extortionate extensions of credit; . . . (c) From in or about 1993, up through and including in or about 2002, in the Southern District of New York, the Eastern District of New York, and elsewhere, Michael Yannotti . . . and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and attempt to collect extensions of credit.

[10]    Yannotti's pre-trial motion related to the inadequacy of the allegations provided in Racketeering Act Ten. The government subsequently renumbered this Act as Seven.

language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). Federal Rule of Criminal Procedure 7(c) requires only that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."

The contested portions of the racketeering act provided Yannotti with sufficient notice of the allegations regarding loansharking so that he could defend against those allegations in the instant prosecution and in any future prosecutions. Additionally, the government provided Yannotti with discovery, including the tapes, records, and names of participants associated with the loansharking conspiracy. Yannotti was well aware of the government's theory of the loansharking conspiracy as well as the identities of any victims and co-conspirators, even if that information was not pled in the indictment. Moreover, despite Yannotti's contentions, Racketeering Act Seven makes clear the nature of the criminal conduct, the time span, and the location where this conduct occurred. Since Rule 7(c) requires no more, we find that the allegations in the indictment are sufficient.

## V.

Finally, Yannotti challenges the sentence imposed by the district court as unreasonable because it was based on the court's unsubstantiated finding that he committed the kidnaping and attempted murder of Curtis Sliwa alleged in Racketeering Act One. The jury found that the government had not proven Yannotti's involvement in Sliwa's attempted murder, but could not agree on whether the government had proven his participation in the conspiracy to kidnap or the kidnaping of Sliwa. The jury also found unproven all of the other charged racketeering acts with the exception of Racketeering Act Seven – – the loansharking conspiracy.

23

In calculating the sentence under the now advisory Sentencing Guidelines, the Probation Officer determined in the Presentence Investigation Report that Yannotti's base offense level for his racketeering conspiracy conviction was 19 pursuant to U.S.S.G. § 2E1.1(a)(1), leaving to the discretion of the district court any application of relevant conduct adduced at trial. The Probation Officer further calculated his Guidelines range as 37-46 months' imprisonment and recommended a sentence of 41 months. During the sentencing proceeding, in response to the court's question about the impact of relevant conduct on Yannotti's sentence, defense counsel requested that conduct found unproven by the jury not be reviewed by the court. The government retorted that all conduct presented at trial could be considered, given the credibility of its witnesses as well as the multitude of evidence established concerning Yannotti's participation in the Sliwa kidnaping. The district court ultimately found that this activity, while not proved to the satisfaction of a unanimous jury, had nonetheless been established by a preponderance of the evidence and could be factored into Yannotti's sentence as relevant conduct pursuant to U.S.S.G. § 1B1.3.

Yannotti contends that procedural error occurred in the sentencing court's approach. He argues that the jury's finding of his participation in the RICO conspiracy did not authorize the court, when determining his Sentencing Guidelines range, to place any weight on his involvement in the Sliwa assault. Moreover, he challenges the court's employment of a preponderance of the evidence, as opposed to a reasonable doubt, standard in finding him responsible for the Sliwa assault. In support, he points to U.S.S.G. § 1B1.2(d) which provides that a "conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Yannotti argues that, in light of this provision, his

24

Guidelines range for participation in a RICO conspiracy should be calculated based only on predicate conduct that a fact-finder found him to have engaged in beyond a reasonable doubt. We disagree with Yannotti on this issue of first impression in our circuit.

Yannotti's argument depends on a construction of U.S.S.G. § 1B1.2(d) that would require each predicate act alleged as part of a RICO conspiracy to be treated as a separate object of the criminal agreement to be factored into a Sentencing Guidelines calculation only if that act was proved beyond a reasonable doubt. However, he improperly assumes that multiple racketeering predicates can transform a RICO conspiracy into the multi-object conspiracy referenced in U.S.S.G. § 1B1.2(d) .

As Yannotti acknowledges, the RICO conspiracy with which he was charged had only one object – – to conduct or participate in the affairs of the charged enterprise, the Gambino Crime Family, through a pattern of racketeering. *See* 18 U.S.C. § 1962(c), (d). While the intended pattern of this conspiracy may have involved a variety of criminal conduct, including construction fraud, loansharking, kidnaping, and attempted murder, the underlying objective of the conspiracy remained the singular one proscribed by § 1962(c). Indeed, to secure Yannotti's conviction for RICO conspiracy, the government was not required to prove the *actual* commission of a single predicate act by Yannotti or any other conspirator. *See Salinas*, 522 U.S. at 64 (noting that "[t]he RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act"). The underlying predicate acts are relevant merely to establish the existence of the charged agreement among members of the conspiracy to conduct the affairs of the enterprise through a pattern of racketeering conduct[11] and do not constitute

---

[11] Although the same predicate acts may be charged with respect to both substantive and RICO conspiracy counts, the jury inquiry may be different. In deciding whether a defendant is

separate criminal objectives. *See United States v. Corrado,* 227 F.3d 528, 542 (6th Cir. 2000).

Because overt acts are not distinct offenses that must be proven to sustain a RICO conspiracy conviction, and the RICO conspiracy charged in this case is appropriately viewed as single-object conspiracy, we now join the First and Sixth Circuits in concluding that U.S.S.G. § 1B1.2(d) is inapplicable.[12] *See Corrado*, 227 F.3d at 541; *United States v. Carrozza*, 4 F.3d 70, 79 (1st Cir. 1993). Thus, a sentencing court may consider predicate acts as relevant conduct under U.S.S.G. § 1 because their commission need not be proven beyond a reasonable doubt.

Given our finding that the predicate acts alleged against Yannotti do not require proof beyond a reasonable doubt to sustain his RICO conspiracy conviction, the kidnaping conduct was properly viewed by the district court as relevant conduct. We have consistently emphasized that a district court may consider all information adduced during trial, including acquitted conduct, when sentencing a defendant. *See United States v. Vaughn*, 430 F.3d 518, 526-27 (2d Cir. 2005). While a fact-finder is required to find guilt beyond a reasonable doubt, the sentencing court may

guilty of substantive RICO, the jury identifies predicate acts committed by that defendant to determine if he has himself conducted the affairs of the enterprise through a pattern of racketeering. However, in deciding whether a defendant is guilty of RICO conspiracy, the jury identifies whether the charged predicate acts were, or were intended to be, committed as part of that conspiracy. Thus, the jury must consider these acts to determine whether the co-conspirators, not solely the defendant, agreed to conduct the affairs of the enterprise through a pattern of racketeering. As stated previously, to prove a defendant's membership in the agreement, the government need not prove that the defendant committed or agreed to commit any of the charged predicate acts as long as the government proves that he participated in some manner in the overall objective of the conspiracy. *See Salinas*, 522 U.S. at 64; *see also* L. Sand, et al. Modern Federal Jury Instructions, (Criminal) Inst. 52-32 (2000) (providing that jury be instructed as to predicate acts charged in RICO conspiracy: "Again, the government must prove that two of these acts were, or were intended to be, committed as part of the conspiracy, although it need not prove that defendant committed or agreed to commit any of these acts as long as the government proves that defendant participated in some manner in the overall objective of the conspiracy.").

[12]    In so holding, we reject the approach taken by the Eleventh Circuit in *United States v. Farese*, 248 F.3d 1056, 106-61 (11th Cir. 2001).

find facts relevant to sentencing by the lower preponderance of the evidence standard. *Id.* Therefore, there was no clear error in the court concluding that based on a preponderance of the evidence, Yannotti's involvement in the assault on Sliwa could be taken into account in sentencing.

The district court was in the unique position to consider the credibility of the witnesses and to conclude, as it did, that two of the government's witnesses had been particularly credible in their testimony about Yannotti's participation in the Sliwa kidnaping. The court appropriately considered the Guidelines and the factors specified under 18 U.S.C. § 3553(a) and sentenced Yannotti within the Guidelines range. We conclude that Yannotti's sentence was both procedurally and substantively reasonable.

**CONCLUSION**

The judgment of the district court is affirmed.