24-1253 (L)
*United States v. Bynum, Davis*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand twenty-five.

PRESENT:
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.

WILLIAM BYNUM, RONALD GLEN DAVIS,

> *Defendants-Appellants,*

Nos. 24-1253 (Lead)
24-1425 (Con)

ALAN ANDERSON, TERRENCE WILLIAMS,
ANTHONY ALLEN, DESIREE ALLEN,
SHANNON BROWN, CHRISTOPHER DOUGLAS-
ROBERTS, MELVIN ELY, JAMARIO MOON,
DARIUS MILES, MILTON PALACIO, RUBEN
PATTERSON, EDDIE ROBINSON, GREGORY
SMITH, SEBASTIAN TELFAIR, CHARLES
WATSON, JR., ANTOINE WRIGHT, ANTHONY
WROTEN, AAMIR WAHAB, WILLIAM JAMES
WASHINGTON, KEYON DOOLING, SOPHIA
CHAVEZ, PATRICK KHAZIRAN, RASHAD
SANFORD,

*Defendants.*[*]

_____

| | |
|---|---|
| **For Defendant-Appellant Bynum:** | JOSHUA B. ADAMS, Law Offices of Joshua B. Adams, Chicago, IL. |
| **For Defendant-Appellant Davis:** | BRENDAN WHITE, White & White, New York, NY. |
| **For Appellee:** | RYAN B. FINKEL (Daniel G. Nessim, Michael D. Maimin, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY. |

Appeals from two judgments of the United States District Court for the

Southern District of New York (Valerie E. Caproni, *Judge*).

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

2

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 17, 2024 and May 10, 2024 judgments of the district court are **AFFIRMED**.

William Bynum and Ronald Glen Davis – former professional basketball players – appeal from their respective judgments of conviction following a jury trial at which Bynum was found guilty of conspiracy to make false statements relating to healthcare matters in violation of 18 U.S.C. § 371, and Davis was found guilty of wire and healthcare fraud and conspiracy to make false statements relating to healthcare matters and to commit healthcare fraud in violation of 18 U.S.C. §§ 1349, 1347, 1343, and 371.   Both cases stem from a broader conspiracy by players, doctors, and others to defraud the National Basketball Association ("NBA") Players' Health and Welfare Benefit Plan (the "Plan") out of millions of dollars through the submission of falsified invoices and claims for reimbursement for treatments that never occurred.   Bynum is currently serving an eighteen-month term of imprisonment, and Davis is serving a term of forty months' imprisonment.   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

3

## I. Bynum's Challenge to the Jury Instruction on Conscious Avoidance

Bynum first argues that the district court gave an improper jury instruction on conscious avoidance with respect to the only count on which the jury convicted him – namely, conspiracy to make false statements relating to health care matters. We "review a claim of error in jury instructions *de novo*, reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error." *United States v. Tropeano*, 252 F.3d 653, 657–58 (2d Cir. 2001). "We have held that a conscious avoidance instruction may be given only" (1) "when a defendant asserts the lack of some specific aspect of knowledge required for conviction," and (2) "the appropriate factual predicate for the charge exists, *i.e.*, the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003) (internal quotation marks omitted). Because Bynum clearly put his knowledge at issue before the jury, *see* Dist. Ct. Doc. No. 1168 at 1518 (trial transcript), the only question for us to decide is whether "the appropriate factual predicate for the charge exists," *Aina-Marshall*, 336 F.3d at 170 (internal quotation marks omitted).

4

We have repeatedly held that the presence of "[r]ed flags about the legitimacy of a transaction" is enough to warrant a conscious avoidance jury instruction. *United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011) (citing *United States v. Nektalov*, 461 F.3d 309, 312, 317 (2d Cir. 2006)). In *Nektalov*, we identified "several red flags," including the completion of "cash payments using small bills" and the defendant's suspicious "statements about the transactions" (*e.g.*, "moving gold to Colombia" and possessing "money from selling product in the streets"). *Id.* (internal quotation marks omitted). The red flags here are, if anything, even more compelling. Rather than receiving his medical invoices from the rehabilitation center where he allegedly obtained his care, Bynum obtained his medical "invoices from Mr. Williams, a former NBA player[,] . . . who provided invoices that totaled *exactly* $200,000." Bynum App'x at 53 (emphasis added). In addition, these invoices reflected services that the center had "no record of" ever providing. *Id.* at 54 n.13. Moreover, the dates of treatment in California corresponded to a period when "Bynum was residing in Illinois," *id.* at 53, and Bynum's decision to exclude his financial advisor from all calls regarding his fraudulent claim submission – when he had previously included his advisor on prior "innocuous call[s]" dealing with his health plan, *id.* at 54 n.13 – further

5

supported the inclusion of a conscious avoidance charge in this case. *Id.* at 53.
We therefore see no error in the district court's inclusion of a conscious avoidance
instruction to the jury.

## II. Davis's Motion to Dismiss the Indictment

Davis contends that the district court should have dismissed the indictment
against him because the money he obtained via false medical claims was not
property "belong[ing] to another." Davis Br. at 28.[1] He rests his argument on a
rigid reading of the *wire fraud statute, id.* (discussing 18 U.S.C. § 1343), which he
then grafts onto the actual statute that is the subject of his motion to dismiss –
namely, 18 U.S.C. § 1347, *see* Davis Br. at 31–32. Though the two statutes appear
similar, section 1347 includes broader language that criminalizes not just fraud to
obtain "money or property owned by . . . any health care benefit program," but
also any money or property "*under the custody or control of*[] any health care benefit
program," 18 U.S.C. § 1347(a)(2) (emphasis added). There can be no doubt that
the NBA's Plan is a "health care benefit program," *see* Davis App'x at 138, since it
is a "private plan" that (when properly used) is designed to provide a "medical

---

[1] Though Davis argues in his brief that the district court should have also dismissed the wire fraud charge, he waived review of that argument by failing to move the district court to dismiss the wire fraud charge. Fed. R. Crim. P. 12(b)(3)(B)(v); *accord United States v. Rodriguez*, 556 F.2d 638, 641 (2d Cir. 1977).

benefit, item, or service" to NBA players, 18 U.S.C. § 24(b).   And it is equally clear

that the Plan's funds were "under [its] custody or control."   *Id.* at 137–38 (citing

Dist. Ct. Doc. No. 548, Plan Summary at 16).   As a result, the district court did not

err in denying Davis's motion to dismiss the indictment.

**III.    Davis's Challenge to the District Court's Evidentiary Rulings**

Although Davis, through counsel, disclaimed advancing a diminished-

capacity defense at trial, Davis App'x at 154–55, he now contends it was error for

the district court to deny him the chance to introduce evidence regarding his lack

of "sophistication and intellectual wherewithal to recognize that the" claims

"submitted on his behalf were false."   Davis Br. at 41.   Because Davis failed to

present an objection to that effect to the district court, we review his unpreserved

evidentiary claim for plain error.   *United States v. Simels*, 654 F.3d 161, 168 (2d Cir.

2011).   Under that demanding standard, "there must be (1) error, (2) that is plain,

and (3) that affects substantial rights; then, once those initial conditions are met,

an appellate court may then exercise its discretion to notice a forfeited error, but

only if (4) the error seriously affects the fairness, integrity, or public reputation of

judicial proceedings."   *United States v. Mendonca*, 88 F.4th 144, 152 (2d Cir. 2023).

Here, Davis points to no specific evidence he would have introduced nor any specific adverse ruling that prevented him from offering evidence supporting his theory of *mens rea*. *See* Davis Reply Br. at 5 (conceding that "the issue here cannot be boiled down to a discrete evidentiary objection"). At most, the district court deferred ruling on the admissibility of witness testimony that might bolster Davis's *mens rea* theory until after it had a chance "to hear the witnesses." Dist. Ct. Doc. No. 1160 at 24:25–25:1. On this record, we cannot say the district court erred, much less plainly erred, when it deferred ruling on hypothetical questions that Davis never ended up posing to witnesses. Indeed, 18 U.S.C. § 17(a) expressly provides that mental diseases or defects that do not compromise a defendant's ability "to appreciate the nature and quality or the wrongfulness of his acts" do "not otherwise constitute a defense." *Id*. Accordingly, the district court did not err in precluding the admission of hypothetical evidence that Davis lacked the requisite "sophistication and intellectual wherewithal to recognize that the documents that were submitted on his behalf were false." Davis Br. at 41.

## IV. Davis's Procedural and Substantive Challenges to his Sentence

Finally, Davis challenges both the procedural and substantive reasonableness of his sentence.

## A.       Procedural Reasonableness

"A district court errs procedurally when it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [section] 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Alvarado,* 720 F.3d 153, 157 (2d Cir. 2013) (internal quotation marks omitted).   A "sentencing court may find facts relevant to sentencing by the lower preponderance of the evidence standard," *United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008), and "[w]e have long reviewed a district court's findings of fact as they apply to sentencing enhancements only for clear error," *United States v. Garcia*, 413 F.3d 201, 221 (2d Cir. 2005).

Davis contends that the district court improperly attributed the fraud proceeds of his co-conspirators to Davis merely because they used the same doctor to authenticate their fraudulent reimbursement claims.   According to Davis, those losses were not "reasonably foreseeable" to him.   But we will not conclude that a district court erred in aggregating loss amounts caused by co-conspirators so long as "there was evidence that [the defendant] was well aware of the larger scheme."   *United States v. Zichettello*, 208 F.3d 72, 107 (2d Cir. 2000).   Moreover,

the Guidelines make clear that sentencing courts need not find that a defendant actually "knew" whether and to what extent his co-conspirators would cause additional losses; all that's required is a finding that a defendant, "under the circumstances, reasonably should have known" about the losses that may "*potential*[*ly*] result" from his offense. U.S.S.G. § 2B1.1(b)(1) n.(C)(iv) (emphasis added); *see also United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995) ("We have previously held that in order for a district court to sentence a defendant on the basis of criminal activity conducted by a co-conspirator, a district court must make a particularized finding as to whether the activity was foreseeable to the defendant.").

Here, the district court carefully discharged that requirement at sentencing. *See* Davis App'x at 239–40 ("[I]t was reasonably foreseeable to Mr. Davis that the other three [co-conspirators] were going to submit claims akin to his," because "[t]hey all went to the office for letters of medical necessity, and they all talked . . . about the scheme."). Indeed, Davis's counsel admitted at sentencing that Davis and his co-conspirators together "went to the common doctor" involved in their scheme. *Id.* at 239. The government also introduced evidence that Davis confided in a co-defendant that he "ha[d] done this" scheme to "get money from

his health care account" "before," *id.* at 176, and that his co-defendants were so aware of each other's efforts to cause similar losses that they even "had a conversation outside after the pretend doctor's appointment in the parking lot where they . . . joked about the whole thing," *id.* at 237.

The trial testimony also established that – notwithstanding Davis's insistence that he went to the common doctor alone – he actually accompanied three other players to get phony treatment records from the same doctor. Dist. Ct. Doc. No. 1168 at 1328:22–1329:23. The purpose of their visit was to obtain fraudulent invoices that they would use to seek reimbursement from the Plan, which they subsequently all did. Dist. Ct. Doc. No. 1174 at 2121–22. Davis's provable lie "that he went alone" to the doctor, *id.* at 2122:2, evidences his understanding that he could be liable for losses incurred by his co-conspirators. And Davis's acknowledgment that he had previously engaged in the very fraud that he and his co-conspirators were about to commit confirms that he "was well aware of the larger scheme," *Zichettello*, 208 F.3d at 107, to defraud the NBA's Plan. In light of this evidence, we cannot say the district court clearly erred when it concluded, based on the facts before it, that the losses attributable to Davis's co-conspirators were reasonably foreseeable to him as well.

11

**B.    Substantive Reasonableness**

A sentence is substantively unreasonable if it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law."    *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).    A defendant challenging the substantive reasonableness of his sentence "bears a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential."    *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012).

Davis argues that the shorter sentences the district court imposed on his co-defendants – including the sentence of time served imposed on co-defendant Charles Watson, Jr. – demonstrates the substantive unreasonableness of his sentence.    But the fact that multiple individuals were charged as part of a larger conspiracy does not mean that they are, by definition, similarly situated.    In contrast to Davis, Watson was a cooperating witness who provided substantial assistance to the government and received a letter pursuant to section 5K1.1 of the Guidelines.    And the district court specifically found that Davis was substantially more culpable in the overall conspiracy than his co-defendants.    *See* Davis App'x at 267–69 (noting that "not only did Davis try to deceive the plan, but he broadened the scheme to include another doctor").

12

Davis also points to the disparity between his sentence and that of the average sentence nationally for fraud defendants in the same offense level and criminal history category to argue that his sentence was substantively unreasonable. But disparities between a defendant's sentence "and the purported national average and median sentences that he points to" can be justified by "the context that renders [the defendant's] crimes particularly worthy of opprobrium." *United States v. Sampson*, 898 F.3d 287, 314 (2d Cir. 2018). The district court, relying on detailed factual and contextual findings, concluded as much here. *See* Davis App'x at 263–72; *see also id.* at 268 ("Further increasing the seriousness of Mr. Davis's conduct, he actively tried to cover up his criminal conduct when he was interviewed by the plan and when he called the plan to check on a claim.").

Consequently, we cannot say that the sentence imposed was shockingly high or "otherwise unsupportable as a matter of law." *Rigas*, 583 F.3d at 123.

\*    \*    \*

We have considered Bynum's and Davis's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14