UNITED STATES of America,

v.

RUBIN/CHAMBERS, DUNHILL INSURANCE SERVICES, et al., Defendants.

No. 09 Cr. 1058 (VM).

United States District Court, S.D. New York.

Dec. 7, 2011.

Rebecca Meiklejohn, Steven Tugander, Charles Vincent Reilly, Eric C. Hoffmann, Kevin Bradford Hart, U.S. Department of Justice, Antitrust Division, New York, NY, Lucy Pepe McClain, U.S. Department of Justice, Antitrust Division, Philadelphia, PA, for Plaintiff.

Joseph Walker, Richard William Beckler, Robert H. Cox, Howrey LLP, Washington, DC, Adam Stewart Katz, Bradley Drew Simon, Simon & Partners LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

The Court has received ten motions *in limine* from the Government and defendants Rubin/Chambers, Dunhill Insurance Services, Inc. ("CDR"); David Rubin ("Rubin"); Zevi Wolmark a/k/a Stewart Wolmark ("Wolmark"); and Evan Andrew Zarefsky ("Zarefsky") (collectively, "Defendants") related to the upcoming trial in this matter. In resolving these motions, the Court presumes familiarity with all prior decisions and orders in this case.

A summary of the parties' requests and the Court's rulings thereon follows. The Government requests that the Court:

(1) Permit the Government to elicit opinion testimony from cooperating witnesses about certain recorded conversations, pursuant to Federal Rule of Evidence ("FRE") 701 and *United States v. Yannotti*, 541 F.3d 112 (2d Cir.2008) (Docket No. 186): **DENIED without prejudice.**

(2) Preclude argument or the introduction of evidence regarding transactions not included in the Final Bill of Particulars (the "BOP") (Docket No. 192): **DENIED without prejudice.**

(3) Limit Defendants' use of certain documents created by the Government during witness interviews (Docket No. 189): **DENIED.**

(4) Require that Defendants provide the Government with notice of any advice of counsel defense six weeks prior to trial (Docket No. 183): **DENIED.**

Defendants request that the Court:

(1) Exclude evidence of Rubin's net worth, political donations and relationships with politicians or political consultants, pursuant to FRE 403 (Docket No. 208): **GRANTED in part, DENIED in part.**

(2) Exclude certain categories of evidence under FRE 404(b) (Docket No. 198): **DENIED.**

(3) Exclude evidence related to any transaction in which CDR did not serve as broker (Docket No. 200): **DENIED.**

(4) Preclude argument that Defendants' violation of certain United States Treasury Department regulations (the "Treasury Regulations") is illegal per se (Docket No. 204): **DENIED.**

(5) Exclude evidence related to alleged kickbacks first identified in the BOP (Docket No. 202): **DENIED.**

(6) Limit evidence of alleged kickbacks to those kickbacks that are associated with swap or hedge transactions and related to transactions listed in the BOP (Docket No. 206): **DENIED.**

## I. THE GOVERNMENT'S REQUEST TO ELICIT OPINION TESTIMONY FROM COOPERATING WITNESSES

The Government's case-in-chief will include testimony from cooperating witnesses who purportedly participated in the conspiracies alleged in the Superseding Indictment (Docket No. 67). The Government requests permission to elicit opinion testimony from certain of those cooperating witnesses regarding the content of recorded conversations involving members of the alleged conspiracies. The Government relies upon FRE 701 and *Yannotti*, 541

F.3d at 125–127, in asserting that cooperating witnesses are permitted to testify as to the meaning of terms used on recorded phone calls. The Government argues that its proffered testimony will "decode" recorded conversations, thereby assisting the jury in making factual determinations based on those conversations. In some instances, the cooperating witness will have participated in the call at issue. As to other recordings, the cooperating witness will not have participated in the recorded conversation, but the Government promises to establish a foundation for that witness's personal knowledge of the participants and matters discussed.

■ FRE 701 permits non-experts to offer opinion testimony if such testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701. The burden to establish a proper foundation is on the party seeking to introduce lay opinion testimony. *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir.2002).

Defendants oppose the Government's motion and argue that the proffered testimony fails to meet each of the three requirements of FRE 701. In the alternative, Defendants argue that the testimony must be excluded under FRE 403 because its probative value is substantially outweighed by attendant risks of prejudice and juror confusion.

At this stage, the Government has not, and cannot, establish the foundation necessary to satisfy FRE 701. The Court finds that the testimony at issue in the Government's motion ultimately may be admissible if the Government is able to establish the presence of each FRE 701 requirement at trial in accordance with the principles discussed below.

## A. *PERSONAL KNOWLEDGE*

■ First, the Government must establish that the witness has personal knowledge of the contents of each conversation to which that witness will testify. This first requirement of Rule 701 is met where the witness derives his opinion from "first-hand knowledge or observation." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir.1992). Accordingly, a proper foundation will be readily established where the witness was a participant in the conversation.

■ The Government may also satisfy the personal knowledge requirement where the witness did not participate in the conversation, if the witness is able to demonstrate personal knowledge by identifying the voices of the participants and was personally familiar with or involved in the transaction being discussed. *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir.2007). Where the witness's participation in the charged conspiracy "afford[s] him particular perceptions of its methods of operation," the personal knowledge requirement does not bar a witness from testifying as to actions of his co-conspirators that he did not witness directly. *Yannotti*, 541 F.3d at 126 n. 8. Therefore, if the Government establishes that a witness's participation in the alleged conspiracy afforded the witness knowledge about the contents of the recorded conversation, the personal knowledge requirement of FRE 701 may be satisfied even as to conversations in which the witness did not participate.

## B. *HELPFULNESS TO THE JURY*

■ Second, the Government must satisfy the helpfulness requirement of FRE 701 by showing that the jury would be

aided by the witness "decoding" the particular recorded conversation at issue. As the Second Circuit has repeatedly recognized, "individuals engaging in illicit activities rarely describe their transactions in an open or transparent manner and the government may call witnesses to provide insight into coded language through lay opinion testimony." *Id.* at 126.

■ However, if the conversation at issue is "facially coherent," then the Government must present evidence or testimony that "call[s] into question the apparent coherence of the conversation so that it no longer seem[s] clear, coherent, or legitimate." *Garcia*, 291 F.3d at 142. Thus, the first and second requirements of FRE 701 are intertwined: To justify the presentation of opinion testimony explaining the purported use of a code in a facially coherent conversation, the Government must lay a foundation explaining how the witness knew of the code *and* how any non-witness participants in the conversation knew of the code. *Id.* at 141 (finding lack of proper foundation because witness "did not testify that they had spoken in code before; he did not testify that the code he used was a common one; and he did not testify that [the non-witness participant] and he had a prior agreement to speak in code or that they had discussed this possibility").

If a particular conversation proffered at trial is facially incoherent, then decoding lay opinion testimony may be admitted subject to the Government's satisfaction of the other two requirements of FRE 701. If the conversation is facially coherent, however, then the Government must adduce evidence suggesting that a code was in use to satisfy the helpfulness requirement.

## C. *NOT BASED UPON SPECIALIZED KNOWLEDGE*

■ Third, FRE 701 permits lay opinion testimony only if it is not based upon "specialized knowledge within the scope of Rule 702." FRE 701. Defendants argue that *Yannotti* permits lay opinion testimony regarding codes used in alleged conspiracies only where the witness's knowledge is derived *exclusively* from her participation in the conspiracy. Because the testimony of the Government's witnesses will necessarily be based, at least in part, on their experience and training in the financial industry, Defendants argue that the Government cannot satisfy the third requirement of FRE 701.

While there is some language in the controlling case law suggesting that lay opinion is appropriate only where derived "*solely* from insider perceptions of a conspiracy," *Yannotti*, 541 F.3d at 126 (emphasis added), the Court finds that Defendants overextend the concept of specialized knowledge. *See also United States v. Garcia*, 413 F.3d 201, 215 (2d Cir.2005).

■ The Second Circuit has held that as long as opinions do "not depend on the sort of specialized training that scientific witnesses or statisticians rely upon when interpreting the results of their own experiments or investigations," some degree of specific, industry-related knowledge will not disqualify lay opinion testimony. *Yannotti*, 541 F.3d at 126; *see also United States v. Rigas*, 490 F.3d 208, 223, 225 (2d Cir.2007) (permitting, as lay witness testimony, accounting consultant's highly technical description of organization's fraudulent financial statements where witness's knowledge was based on his review of accounting statements during internal investigation). Where the witness's opinion testimony is the product of a "reasoning process familiar to the average person in everyday life," the use of specialized vocabulary or reliance upon industry-specific background knowledge in a lay witness's testimony does not trigger the strictures

applied to expert testimony under FRE 702. *Garcia*, 413 F.3d at 215–16; *Yannotti*, 541 F.3d at 126.

"The purpose of this final foundation requirement [of FRE 701] is to prevent a party from conflating expert and lay opinion testimony[,] thereby conferring an aura of expertise on a witness." *Garcia*, 413 F.3d at 215. Here, if the Government presents the opinion testimony at issue as the product of the witnesses' participation in the conspiracy rather than their experience in the financial industry more broadly, there is little danger that the jury would mistake the cooperating witnesses for experts. That the witnesses' ability to decode the conversations at issue is obviously and unavoidably informed by their experience in the financial industry should not render the subject of their testimony the province of experts.

■ Finally, a word of caution as to testimony addressing ultimate issues reserved for the jury. While expert witnesses are prohibited from testifying as to the mental state of a criminal defendant, "there is no theoretical prohibition against allowing lay witnesses to give opinions as to the mental states of others." *Rea*, 958 F.2d at 1215. However, "the purpose of the foundation requirements of the federal rules governing opinion evidence is to ensure that such testimony does not so usurp the fact-finding function of the jury." *Garcia*, 413 F.3d at 211–12. Therefore, the Government should be mindful to avoid inviting the witnesses to instruct the jury regarding their conclusion as to the Defendants' state of mind.

Because the Government has not established the necessary foundation for the testimony at issue in this motion at this pre-trial stage, the Government's motion is DENIED without prejudice.

In accordance with the legal principles discussed above, the Government may seek to introduce such lay opinion testimony on a witness-by-witness and conversation-by-conversation basis during trial, at which point the Court, sufficiently informed, will be in a position to assess whether the Government has satisfied the foundational requirements of FRE 701.

## II. THE GOVERNMENT'S REQUEST TO EXCLUDE EVIDENCE REGARDING TRANSACTIONS NOT LISTED IN THE FINAL BILL OF PARTICULARS

The Government seeks exclusion of evidence related to transactions not referenced in the Superseding Indictment or BOP ("Uncharged Transactions"). The Government asserts that the Defendants' expected attempts to use the Uncharged Transactions to suggest their lack of illicit intent in transactions that the Government will present as overt acts in furtherance of the alleged conspiracies (the "Overt Acts Transactions") runs afoul of FRE 404(b) and is irrelevant and excludable under FRE 403.

First, the Court considers whether FRE 404(b) governs the admissibility of evidence related to the Uncharged Transactions. Finding that FRE 404(b) does apply,[1] the Court next evaluates whether Defendants' evidence of the Uncharged Transactions is relevant for a non-propensity purpose under FRE 404(b). Because the Court concludes that Defendants may

---

1. Whether or not FRE 404(b) controls, the Court notes that the admissibility of evidence related to the Uncharged Transactions ultimately turns on whether the probative value of such evidence as to Defendants' intent in conducting the Overt Act Transactions is substantially outweighed by the accompanying potential for delay, juror confusion or prejudice.

be able to show that the Uncharged Transactions are relevant to the question of their intent in entering into the Overt Act Transactions, the Court concludes with a discussion of how the balancing test set forth in FRE 403 will apply at trial to evidence of the Uncharged Transactions.

A. *THE APPLICABILITY OF FRE 404(b)*

FRE 404(b) reads as follows:

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident . . . .

FRE 404(b). The Court must first determine, then, whether the Uncharged Transactions are "other acts," and therefore governed by FRE 404(b), or whether the Uncharged Transactions are "intrinsic" to or "inextricably intertwined" with the alleged conspiracies, rendering FRE 404(b) inapplicable.

■■■ The Second Circuit Court of Appeals has held that FRE 404(b) does not apply to a defendant's actions that are "'inextricably intertwined with evidence regarding the charged offense.'" *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir.2007) (*quoting United States v. Towne*, 870 F.2d 880, 886 (2d Cir.1989)). It is well-established that "evidence of uncharged *criminal activity* is not considered 'other crimes' evidence under [FRE] 404(b) if it . . . is necessary to complete the story of the crime," *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997) (internal quotations omitted); *United States v. Affronti*, 113 F.3d 1230 (2d Cir.1997) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather it is part of the very act charged." (internal quotations omitted) (alteration in original)).

■■■ Defendants maintain that the transactions enumerated in the BOP are "uncharged"[2] acts because they are not presented or referenced directly in the Superseding Indictment. Defendants argue that the "uncharged" transactions in the BOP are "intrinsic" to the conspiracies charged under Second Circuit law and, therefore, that the Uncharged Transactions—which occurred during the conspiracy and under similar circumstances to the Overt Act Transactions—are also "intrinsic," necessary to tell the whole story of the business at issue, and likewise beyond the reach of FRE 404(b).

The allegation of broad conspiracies does not, however, render "inextricably intertwined" with those conspiracies every

---

**2.** This position is dubious. A bill of particulars is properly considered a charging instrument because its purpose is to provide the factual details that substantiate an indictment and put a defendant on notice of the charges against him so he may prepare his defense. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir.2010). That the material set forth in a bill of particulars is integral to the indictment is clear from the structure of the Federal Rules of Criminal Procedure, which permit the use of bills of particulars in a subsection of Rule 7, which is entitled "The Indictment and the Information." Fed. R.Crim.P. 7. Accordingly, the Court rejects Defendant's false distinction between actions "charged" in the indictment and those "uncharged," yet intrinsic, as presented in the BOP.

transaction conducted by Defendants during the relevant time period. Defendants have failed to cite—and the Court's own research has not uncovered—any case in which a defendant's purportedly innocent actions have been found so "inextricably intertwined" with an alleged conspiracy as to render those acts beyond the reach of FRE 404(b).

Indeed, courts often find that purportedly innocuous actions taken during the duration of a conspiracy are extrinsic to the conspiracies charged and subject to FRE 404(b), even though such acts may have occurred in contexts similar to the allegedly conspiratorial actions. *See United States v. Walker,* 191 F.3d 326, 336 (2d Cir.1999) (affirming exclusion of "asylum applications that [the defendant] had prepared that contained non-boilerplate, honest accounts of persecution, [despite argument] that the existence of these honest applications disproved his fraudulent intent"); *United States v. Scarpa,* 913 F.2d 993, 1011 (2d Cir.1990) (affirming exclusion of taped conversations that were not in furtherance of narcotics conspiracy despite argument that innocuous conversations refuted prosecution theory that narcotics business was discussed at location of recordings); *United States v. Gambino,* 838 F.Supp. 744, 748 (S.D.N.Y.1993) (finding absence of defendant among individuals discussing narcotics transactions not exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because "a defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence").

In short, the Second Circuit recognizes a distinction between evidence of conduct in furtherance of a conspiracy and evidence of innocuous conduct within the context of the conspiracy. Accordingly, the Court concludes that evidence related to the Uncharged Transactions is not "inextricably intertwined" with the Government's allegations and is subject to FRE 404(b).

## B. *RELEVANCE OF THE UNCHARGED TRANSACTIONS TO THE QUESTION OF THE DEFENDANTS' INTENT*

Though evidence of the Uncharged Transactions is extrinsic, it is not necessarily inadmissible if offered for a permitted use under FRE 404(b). Defendants contend that such evidence is related to the question of their intent in entering into the Overt Act Transactions, a proper non-propensity purpose.

▬▬▬ The Second Circuit "follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under [FRE] 403 or not relevant under [FRE] 402." *United States v. Carlton,* 534 F.3d 97, 101 (2d Cir.2008) (citation omitted). A district court properly admits such evidence under FRE 404(b) if "(1) the prior acts evidence [i]s offered for a proper purpose; (2) the evidence [i]s relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweigh[s] the danger of its unfair prejudice;[3] and (4) the

---

**3.** In both *Brand* and *Garcia,* this third consideration is worded as requiring the probative value of the proffered evidence to "substantially outweigh" any risk of prejudice, effectively inverting the relevant standard pronounced in FRE 403. *See* FRE 403 ("[t]he court may exclude relevant evidence if its

probative value is substantially outweighed by...."). However, both *Brand* and *Garcia* rely upon *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), which replicates the phrasing of FRE 403 and expressly relies upon that rule. *Id.* at 691, 108 S.Ct. 1496 ("third, ... the

court administer[s] an appropriate limiting instruction." *United States v. Brand,* 467 F.3d 179, 196 (2d Cir.2006) (*citing Garcia,* 291 F.3d at 136.). A "court may admit evidence that serves any 'non-propensity purpose,' including state of mind," or intent. *United States v. Curley,* 639 F.3d 50, 57 (2d Cir.2011) (*quoting United States v. Edwards,* 342 F.3d 168, 176, 180 (2d Cir.2003)). Additionally, "relevant background evidence" is admissible and "outside the ambit of Rule 404(b)." *United States v. Romero–Padilla,* 583 F.3d 126, 130 (2d Cir.2009).

■■■ As stated above, the evidence proffered must be relevant to a purpose permissible under FRE 404(b). "To satisfy the relevance inquiry, the evidence must be 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence.'" *See Curley,* 639 F.3d at 57 (*quoting United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987)). Moreover, the evidence in question is probative only to the degree to which it is similar to the conduct at issue. *Id.* The trial court is required to "consider all the evidence presented to the jury and determine whether a reasonable jury could find the advocated inference." *Id.* (citations omitted).

■■■ Defendants contend that evidence of the Uncharged Transactions is relevant to the question of intent. An example is illustrative. Part of the Government's theory in this case is that Defendants provided pricing information to certain favored bidders—who are alleged to be Defendants' co-conspirators—for the anti-com-petitive purpose of affording that favored bidder an opportunity to win the bid if it so desired. Defendants maintain that among the Uncharged Transactions are instances in which allegedly favored bidders received pricing information and competed for the contract, but ultimately lost the auction. Defendants maintain that such examples indicate that they possessed an honest intent to obtain the highest price for its clients. Defendants present numerous other possible transactional scenarios that would test the Government's theory of intent and may be represented in the Uncharged Transactions.

If an Uncharged Transaction shared the same objective characteristics as an Overt Act Transaction, but the bidding outcome differed, the Uncharged Transaction could be relevant to undermine the Government's position that Defendants possessed the intent to manipulate the bidding process. In other words, such evidence may be relevant to "cast doubt on the [G]overnment's theory that" the allegedly favored bidders in the Overt Act Transactions won the bids there because of Defendants' illegal intent to restrain trade or defraud their clients. *United States v. Santos,* 201 F.3d 953, 962 (7th Cir.2000) ("If some of the recalicitrants [who refused to make campaign contributions] were spared ... this is some evidence that the pleas for campaign contributions were not [intended as] threats."). Accordingly, such evidence would be, at least marginally, relevant to the question of the Defendants' intent in entering into the Overt Act Transactions and therefore may be admissible under FRE 404(b).[4]

assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice"). Per *Huddleston* then, the third requirement for admission under FRE 404(b) must be that the probative value of the proffered evidence as to a permitted purpose not be substantially outweighed by the risk of unfair prejudice, delay or juror confusion, just as set forth in FRE 403.

## C. *APPLICATION OF THE FRE 403 BALANCING TEST*

 Even if Defendants can establish the relevance of particular evidence related to the Uncharged Transactions, the Court must still apply FRE 403 to determine whether and to what extent to allow testimony and argument regarding the Uncharged Transactions. *Curley*, 639 F.3d at 57; *Santos*, 201 F.3d at 962 (reversing exclusion under FRE 404(b) because evidence at issue was offered for permissible purpose of demonstrating intent, though it was "weak evidence" of intent; instead, such evidence should have been excluded, if at all, under FRE 403). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

The potential relevance of the Uncharged Transactions as evidence of the Defendants' intent in the Overt Act Transactions is diminished because Defendants' argument as to relevance is founded upon the implicit and questionable assumption that if they had intended to rig the bidding in certain circumstances, they would have done so in all similar situations. Indeed, there is a competing and compelling explanation for the presence of such innocent acts in the context of a complex scheme such as the one alleged here: In an effort to mask their general manipulation of the market, it is plausible that Defendants chose not to manipulate each and every transaction in which they participated so as to avoid arousing suspicion. Depending

on the evidence adduced regarding the circumstances of particular Uncharged Transactions, this latter inference could be more compelling than the implication advanced by Defendants. If so, evidence of the Uncharged Transaction at issue may be properly excluded as irrelevant and of de minimis probative value.

The Government expresses concern that the consideration of Uncharged Transactions will create trials within the trial, because the prosecutors will be compelled to assail the legitimacy of the Uncharged Transaction at issue and will present evidence to counter the inference advanced by Defendants. The Government's concern is well-taken.

The Court has indicated its intention to provide the Government and Defendants with equal time in which to present evidence to the jury. As such, if Defendants can adequately proffer the admissibility of evidence related to the Uncharged Transactions as outlined above, Defendants may use their allotted time to counter the Government's theory of intent. The Court will not, however, permit Defendants to do so in a manner that substantially and unfairly prejudices the Government, confuses the jury, or unduly complicates or prolongs the trial.

In addition, Defendants must provide notice of what evidence they intend to introduce related to Uncharged Transactions sufficient for the Government to challenge the admissibility of that evidence, as well as to review any related documents and prepare witness examinations. Presumably, such notice will be provided in the course of the parties' good faith and ongoing discussions—which have been and should continue under the supervision of

---

**4.** However, if Defendants fail to present evidence sufficient to support the inference they assert should be drawn from the Uncharged Transactions, the Court may still exclude such evidence as irrelevant.

Magistrate Judge Francis—in advance of the December 9 final pre-trial conference in this matter. Any lingering disputes regarding the Defendants' intended presentation of evidence related to Uncharged Transactions may be addressed at the final pre-trial conference.

### III. THE GOVERNMENT'S REQUEST TO LIMIT THE USE OF INTERVIEW NOTES AND REPORTS CREATED DURING INVESTIGATORY INTERVIEWS OF COOPERATING WITNESSES

During the course of the Government investigation that culminated in this prosecution, Internal Revenue Service ("IRS") agents, Federal Bureau of Investigations ("FBI") agents, and Department of Justice attorneys took notes and prepared reports reflecting their interviews of many witnesses expected to testify at trial. The Government asks that the Court prohibit Defendants from introducing the contents of these notes and reports as evidence of witnesses' prior inconsistent statements.

The Government properly points out—and Defendants do not contest—that the notes and reports may not be admitted as prior inconsistent statements of the cooperating witnesses because the notes and reports have not been endorsed by the cooperating witness and do not represent a "verbatim transcript of the witness's own words." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir.1992). Defendants properly point out—and the Government does not contest—that Defendants may cross-examine cooperating witness regarding statements they made during investigatory interviews and may use the notes or reports to refresh witnesses' recollections. In doing so, Defendants may not read to the jury or move into evidence the relevant notes or reports, nor may Defendants' counsel intimate to the jury that the interview notes or reports represent documentary evidence of prior inconsistent statements. The notes or reports themselves are inadmissible unless moved into evidence by the party adverse to their use as a means to refresh a witness's recollection, in this instance, the Government. *See* FRE 612.

The parties also agree that Defendants are free to call as witnesses the agents or attorneys that authored the notes or reports to ask the interviewers themselves whether the witness made prior statements in the interviews that were inconsistent with their trial testimony. If Defendants do call as witnesses interviewing agents or attorneys, the interviewer's notes or reports may be admissible as evidence of the interviewer's past recollections recorded under FRE 803(5), subject to the prohibition against hearsay within hearsay and the background balancing test mandated by FRE 403.

Because the parties fundamentally agree on the proper scope of use for the interview notes and reports, the Government's motion is DENIED as moot. The Court reserves judgment as to any specific objections raised at trial related to the use of these documents.

### IV. THE GOVERNMENT'S REQUEST FOR SIX WEEKS NOTICE OF ANY ADVICE OF COUNSEL DEFENSE

In preparing their defense for trial, Defendants report that they are still considering whether to raise an advice of counsel defense. Because the overt acts alleged by the Government are comprised of numerous discrete transactions, Defendants' assessment of an advice of counsel defense is also, to some degree, particularized on a deal-by-deal basis.

At bottom, the Government's motion *in limine* as to any potential advice of counsel defense is simply a logistical request. The Government seeks notice sufficient to prepare to attack any advice of counsel defense ultimately advanced by Defendants. Because the Defendants' assertion of an advice of counsel defense would serve to waive the attorney-client privilege as to the subject matter of the relevant advice, the Government foresees the need to review documents previously withheld as privileged and to interview witnesses about their privileged communications. Accordingly, the Government requests six weeks' notice.

██ The Court finds that a requirement of six weeks' notice is not warranted here. First, Defendants have been unable to work cooperatively with their former attorney whose advice may be put forward. On October 19, 2011, subpoenas were issued to collect information from that attorney. Requiring Defendants to collect, process and analyze any responsive information in time to meet a six-week notice deadline would be unreasonable and unnecessary. Further, as Defendants note, the Government has provided them with a lengthy and, at least somewhat, shifting list of transactions that it may present to the jury at trial. The Government cannot possibly present all of these transactions in the time allotted for its case-in-chief. Fairness and efficiency dictate that Defendants have an opportunity to assess their potential advice of counsel defenses based on the transactions that are likely to be presented to the jury.

At the December 9, 2011 final pre-trial conference in this matter, the Court expects the parties to present an agreed-upon approach for using their equal allotments of trial time. Presumably, any agreement as to how time will be used will necessarily include some planning as to

which transactions will actually be presented to the jury. Furthermore, the parties' negotiation of, and agreement upon, a plan for the presentation of evidence at trial would also presumably necessitate notice to the Government of whether advice of counsel defenses will be asserted in relation to the particular transactions slated for presentation to the jury. After such negotiations, with recourse to Magistrate Judge Francis for assistance, any outstanding issues or disputes related to notice of the transactions to be presented or advice of counsel defenses can be resolved at the final pre-trial conference.

██ The Government also raises subsidiary concerns, under FRE 403, should Defendants seek to introduce evidence of attorney-client communications outside the context of an advice of counsel defense. The Government's concerns would arise in a situation where Defendants forego any advice of counsel defense, but present evidence of communications with attorneys for some other purpose. The Government asserts that, under such circumstances, it would be unable to properly cross-examine witnesses on attorney-client communications because it will not have reviewed privileged documents or interviewed witnesses regarding privileged communications. This is a legitimate concern. However, it is alleviated by Defendants' offer to identify, prior to trial, any potentially privileged conversations they intend to introduce during trial. If Defendants introduce such evidence at trial, and the Government believes the notice provided by Defendants of such evidence was insufficient, then the Government may object and the Court will review such objection in light of evidence ultimately proffered and the notice provided to the Government.

The Government also foresees juror confusion should evidence of communications with attorneys be introduced for purposes

other than an advice of counsel defense. While this issue is not ripe for decision, the Court does note that, if Defendants present communications with attorneys outside the context of an advice of counsel defense, a limiting instruction may become appropriate to clarify that Defendants are not asserting that their attorneys provided them with any basis to believe that their actions complied with federal law.

Because the Court finds that six-weeks' notice of any advice of counsel defense is unwarranted under the circumstances, and in light of its instructions to the parties provided above regarding the preparation for trial, the Government's motion is DENIED.

## V. *RUBIN'S REQUEST TO EXCLUDE EVIDENCE OF HIS NET WORTH, INSTRUCTIONS TO CDR EMPLOYEES REGARDING POLITICAL DONATIONS AND RELATIONSHIPS WITH POLITICAL OFFICIALS AND CONSULTANTS*

Defendant Rubin moves, pursuant to FRE 403, to prohibit the Government from presenting evidence regarding his net worth, his instructions to CDR employees regarding reimbursement for their political contributions, or his relationships with political consultants or elected officials. Rubin further asserts that FRE 404(b) bars the Government from introducing evidence that he offered corporate reimbursements to CDR employees for certain political donations because that evidence would impermissibly imply he has a propensity to defraud or impede the IRS.

The Government's opposition greatly narrows the points in contention on Rubin's motion. The Government states that it will not seek to admit evidence of Rubin's net worth, but only evidence of his compensation from CDR, which it connects

to his motive to commit the charged offenses. As to Rubin's relationships with officials or political consultants, the Government intends to offer evidence of only one particular relationship—that with the President and CEO of the Tennessee Municipal Bond Fund—because that relationship is inextricably linked with certain Overt Act Transactions and demonstrative of Rubin's motives. Finally, the Government contends that evidence of Rubin directing CDR employees to falsify business records to facilitate their reimbursement for political contributions is relevant to show his intent to defraud and impede the IRS. Further, the Government intends to question certain of its cooperating witnesses about Rubin's instructions regarding political contributions on direct examination to preempt the Defenses' expected use of evidence that the witnesses falsified business records for impeachment.

Rubin's reply further winnows the parties' differences. Rubin reserves his right to object to the Government's introduction of evidence related to his compensation from CDR and to his relationship with the President and CEO of the Tennessee Municipal Bond Fund. However, Rubin does not continue to press for exclusion of such evidence prior to trial. Therefore, as to these two categories of evidence, Rubin's motion *in limine* is DENIED.

▇▇ Rubin does continue to seek the preclusion of evidence related to his instructions to CDR employees regarding reimbursement for political contributions. Rubin represents that Defendants will not impeach cooperating witnesses with evidence of their falsification of business records, and thus argues that the Government has no need to anticipate such impeachment on direct examination.[5] Further, Rubin asserts that FRE 404(b) and FRE 403 prohibit the introduction of this evi-

---

**5.** In various places throughout these motions

*in limine,* the Government seeks permission

dence because, to whatever extent the evidence is not barred as prior bad act evidence offered to show his propensity to commit the crimes charged here, the evidence is far more prejudicial to Rubin than probative of his motives.

As to this lone remaining issue in contention on this motion, the Court agrees with Rubin. The Government does not contend that the CDR employee contributions or Rubin's instructions regarding related reimbursements have anything to do with the Overt Act Transactions or the allegations in the Superseding Indictment. The Government argues that such evidence is broadly relevant to Rubin's intent to defraud and impede the IRS because he purportedly directed the falsification of records to shift costs upon the IRS and directed the cover up of that corrupt cost-shifting. This assertion, however, in no way links evidence related to the reimbursement of employee political contributions to Rubin's alleged intentions or motivations in regard to the charged conspiracies in the Superseding Indictment. Without such a connection, the evidence at issue would only serve to

suggest that Rubin has a propensity for defrauding or impeding the IRS. Such a suggestion is squarely prohibited by FRE 404(b).

Evidence of Rubin's alleged instructions to CDR employees related to reimbursements for political contributions is also properly excluded under FRE 403 because the introduction of such evidence would require testimony, evidence and argument as to the entirely collateral issue of the legality or appropriateness of Rubin's actions regarding employee political contributions. Such proceedings would confuse the jury, waste time and contribute nothing to the jury's consideration of the crimes charged in the Superseding Indictment. Accordingly, Rubin's request to exclude is GRANTED as to evidence of his instructions to CDR employees with regard to reimbursement for political contributions.

## VI. *DEFENDANTS' REQUEST TO EXCLUDE EVIDENCE UNDER FRE 404(b)*

 Defendants ask the Court to exclude three categories of evidence identi-

to elicit testimony regarding Uncharged Transactions on direct examination in anticipation of impeachment by Defendants on cross-examination. Insofar as the testimony and evidence that the Government would bring out on direct examination is otherwise admissible, the Government is free to do so.

If, however, the evidence or testimony is of questionable admissibility as direct evidence, the Court instructs the Government to reserve the presentation of such evidence or testimony for re-direct examination in the event that Defendants ultimately do pursue the anticipated line of impeachment. The traditional process of impeachment on cross-examination and rehabilitation on re-direct examination is especially warranted here, where the Government anticipates impeachment through cross-examination of the witness regarding other criminal transactions related to or within the same conspiracies charged. The jury will not be surprised to learn that

cooperating witnesses who avowedly participated in the Overt Act Transactions also participated in similar transactions or illegal behavior involving the same set of alleged co-conspirators. In this case, to permit the Government to preempt impeachment arguments by presenting evidence of questionable relevance on direct examination is unwarranted to combat any "psychological advantage" and would likely generate a high degree of delay, prejudice and juror confusion. *Cf. United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988) ("A witness'[s] credibility is often tested by a sequence of attack on cross-examination followed by rehabilitation on redirect. It may sometimes be useful, however, to develop impeaching matter in direct examination of a 'friendly' witness in order to deprive an adversary of the psychological advantage of revealing it to the jury for the first time during cross-examination.").

fied as "Potential Federal Rule of Evidence 404(b) Material" in a September 29, 2011 letter from the Government.[6] (Declaration of Shamiso Maswoswe (Docket No. 212) Ex. A.) Those categories are: (1) Rubin's purportedly undisclosed financial interest in X/L Capital, an institution that placed bids in CDR-brokered auctions; (2) "last looks" of pricing information to co-conspirators identified in Count One of the Superseding Indictment; and (3) alleged instances of wrongdoing in four specific Uncharged Transactions.

Like the evidence of Uncharged Transactions at issue in the Government's motion *in limine* discussed above, the ultimate issue here turns on the relationship between this particular evidence and the conspiracies alleged. First, the question of whether FRE 404(b) governs the introduction of the evidence at issue on Defendants' instant motion hinges on whether the particular category of evidence is intrinsic or extrinsic to the charged conspiracies. Second, and regardless of whether the evidence must satisfy FRE 404(b), the Court must balance the probative value of this evidence against its attendant risks of confusion, delay or prejudice under FRE 403.

The outcome under either rule, however, will be determined by the extent to which the evidence at issue provides information about the Overt Act Transactions to be discussed at trial.[7] If the category of evidence does help complete the story of those Overt Act Transactions, then it will be both intrinsic to the alleged conspiracies and sufficiently probative so as to pass muster under FRE 403. If the Government is unable to establish that this evidence is related to the Overt Act Transactions put forward at trial, then this evidence will be excluded as both extrinsic propensity material under FRE 404(b) and irrelevant, prejudicial, dilatory or confusing under FRE 403.

Though a ruling on the ultimate admissibility of the three categories of evidence at issue must await factual development at trial, a few observations are appropriate at this juncture as to each category.

First, evidence of Rubin's financial interest in X/L Capital appears to be of questionable relevance to any Overt Act Transaction because, apparently, X/L Capital did not win any Overt Act Transaction. Therefore, even if Rubin did have an undisclosed financial interest in X/L Capital, it remains unclear how such an interest served as a motive for his alleged manipulation of bidding processes in which X/L Capital did not benefit.

Second, the Government plans to present evidence that, in certain Overt Act Transactions, Defendants provided coconspirators with so-called "last looks" as to pricing information. Cooperating witness testimony that refers to and explains the practice of providing "last looks" to coconspirators in Uncharged Transactions will likely provide background information as to the conspiracy charged. As long as such testimony is not coupled with specific

---

6. The Court notes that this motion was triggered by and relates to evidence discussed in the Government's September 29, 2011 letter captioned, "Potential Federal Rule of Evidence 404(b) Material." However, the Government's identification of this material as "potential[ly]" governed by FRE 404(b) does not amount to a legal conclusion or admission that must be accepted by this Court.

7. The Government's various arguments that the evidence here at issue is admissible for proper non-propensity purposes even if governed by FRE 404(b) collapse into this relevance inquiry. The evidence is illustrative of a common scheme or plan or of Defendants' intents and motives only to the extent it is similar or related to the Overt Act Transactions. *See supra* Section II.

evidence or lengthy testimony as to Uncharged Transactions, its relevance and usefulness as background and context will likely outweigh any confusion, prejudice or delay.

Third, evidence of wrongdoing in the four specific Uncharged Transactions discussed in the Government's September 29, 2011 letter will be relevant and admissible to the extent that the Government establishes a foundation that those Uncharged Transactions relate to and complete the story of particular Overt Act Transactions. Witnesses will be permitted to testify as to these four Uncharged Transactions where that testimony relates to or explains Defendants' motives, intentions or actions in conducting particular Overt Act Transactions that are presented to the jury.

In sum, Defendants' motion to exclude the evidence identified above is DENIED because the required balancing of relevance to the alleged conspiracies against cumulativeness and delay cannot be performed properly in the abstract prior to trial. Defendants may renew their objections to this evidence during trial if and when the Government seeks to introduce it.

## VII. DEFENDANTS' REQUEST TO EXCLUDE EVIDENCE RELATED TO ANY TRANSACTION IN WHICH CDR DID NOT SERVE AS BROKER

██ Defendants assert that evidence of any transaction in which they did not serve as the broker is irrelevant to the allegations set forth in the Superseding Indictment and should therefore be excluded under FRE 403. The Government responds that, even in transactions where CDR was not the broker, it controlled the bidding process and performed the functions of a broker in order to manipulate transactions in restraint of trade, as alleged in Count One of the Superseding Indictment. The Government plans to put forward evidence of transactions not brokered by CDR to demonstrate that kickbacks were paid to CDR in exchange for its exercise of control over bidding processes alleged in Count Three. As such, the Government argues that transactions in which CDR was not the broker are still within the conspiracies charged in the Superseding Indictment and admissible at trial.

██ Defendants' motion *in limine* amounts to an anticipatory claim that the indictment will be constructively amended should the Government put on evidence related to transactions in which CDR was not the named broker. "To establish a constructive amendment, [Defendants] must show that trial evidence [will] 'so alter[ ] an essential element of the charge that, upon review, it is uncertain whether [they would be] convicted of conduct that was the subject of the grand jury's indictment." *United States v. Rigas*, 490 F.3d 208, 227 (2d Cir.2007) (*quoting United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir.2003)) (alterations added). " '[W]here a generally framed indictment encompasses the specific legal theory or evidence used at trial,' there is no constructive amendment." *Id.* at 228 (*quoting United States v. Milstein*, 401 F.3d 53, 65 (2d Cir.2005)) (alterations in original). The Second Circuit has " 'consistently permitted significant flexibility in proof, provided that the defendant was given *notice of the core of criminality* to be proven at trial.' " *Id.* (*quoting United States v. Patino*, 962 F.2d 263, 266 (2d Cir.1992)) (emphasis in original). Accordingly, "in the context of a conspiracy charge, '[t]he Government need not ... set out with precision each and every act committed ... in furtherance of the conspiracy,' particularly where the acts proven at trial [a]re part of the 'core of the

overall scheme and in furtherance of that scheme.'" *United States v. LaSpina,* 299 F.3d 165, 182 (2d Cir.2002) (*quoting United States v. Cohen,* 518 F.2d 727, 733 (2d Cir.1975)). "'It is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy.'" *Id.* (*quoting United States v. Bagaric,* 706 F.2d 42, 64 (2d Cir.1983)).

Though the Superseding Indictment includes significant detail regarding the role of brokers, references duties owed by brokers, and alleges that CDR took certain actions as a broker, the core of the criminality alleged is not limited to the misdeeds of titular brokers. Rather, the terms of the charged conspiracies speak to the manipulation of bidding and are not limited to manipulation of particular transactions by the entity explicitly engaged as the broker for that transaction. Count One of the Superseding Indictment alleges that Defendants conspired to restrain interstate trade by "allocat[ing] and rig[ging] bids for investment agreements or other municipal finance contracts." (Superseding Indictment (Docket No. 67) ¶¶ 17–18.) Count Three alleges that Defendants conspired to defraud the IRS through a "scheme to deceive municipal issuers by manipulating the bidding process for municipal investment agreements and other municipal contracts ...." (*Id.* ¶¶ 44–45.)

The conclusion that the criminal conduct alleged in the Superseding Indictment cannot be limited to conduct undertaken in the role of a broker is supported by the obvious fact that non-brokers are expressly included as coconspirators. (*See, e.g., Id.* ¶ 43.) Evidence of transactions in which CDR was not the named broker yet still manipulated the bidding process fits within the language of the conspiracies alleged and will not "modify essential ele-

ments of the offense charged to the point that there is a substantial likelihood that [Defendants will be] convicted of an offense other than the one[s] charged by the grand jury," *Rigas,* 490 F.3d at 228 (*quoting United States v. Clemente,* 22 F.3d 477, 482 (2d Cir.1994)).

In the alternative, Defendants move to exclude evidence of non-CDR brokered transactions under FRE 403, asserting that such evidence is unnecessarily cumulative and will result in delay and juror confusion over the role played by CDR in those transactions. The Government argues that evidence of non-CDR brokered transactions is demonstrative of Defendants' manipulation of bidding and the quid pro quo arrangements between Defendants and their co-conspirators. Under these theories, such evidence is relevant to the conspiracies alleged in the Superseding Indictment. As with the other potential sources of delay, redundancy or confusion, the Court may, in the course of trial, determine that such drawbacks substantially outweigh the probative value of specific materials and exclude offered evidence under FRE 403. The Court, however, declines to do so at this juncture.

In light of the foregoing, Defendants' motion to exclude evidence of transactions not brokered by CDR is DENIED.

## VIII. DEFENDANTS' REQUEST TO PRECLUDE ARGUMENT THAT THE FAILURE TO COMPLY WITH CERTAIN TREASURY REGULATIONS AMOUNTS TO A VIOLATION OF LAW

Defendants ask that the Court prohibit the Government from arguing that a violation of certain Treasury Regulations amounts to a criminal act and is illegal *per se.* They contend that those regulations create a safe harbor and that conduct outside that safe harbor is not

necessarily criminal. The Government responds that it has no intention of arguing that violation of the Treasury Regulations is illegal in and of itself, but instead intends to show that Defendants falsely certified to the IRS that certain transactions were conducted within the safe harbor though those transactions did not meet the Treasury Regulation requirements. The Government alleges that such conduct was undertaken in furtherance of a conspiracy to defraud the IRS and the Defendants' issuer clients. In making this argument, the Government will necessarily introduce evidence regarding the content and meaning of the Treasury Regulations and demonstrating Defendants' actions and documents related to those regulations. Defendants expressly deny that their motion *in limine* sought to exclude such evidence or argument.

Because there is apparently no dispute between the parties on this issue, Defendants motion is DENIED as moot. Defendants are free to object at trial to any evidence or argument that could mislead the jury into concluding that violation of the Treasury regulations is illegal *per se.*

## IX. *DEFENDANTS' TWO MOTIONS IN LIMINE RELATED TO EVIDENCE OF ALLEGED KICKBACKS*

Defendants' final two motions *in limine* target three categories of prospective Government evidence of alleged kickbacks. Specifically, Defendants ask the Court to exclude evidence of kickbacks that: (1) were first identified by the Government in the August 2011 BOP ("Newly Identified Kickbacks"); (2) are not associated with "hedges" or "swaps," ("Non–Hedge or Swap Kickbacks"); and (3) are not directly associated with an Overt Act Transaction ("Non–Associated Kickbacks"). With re-

gard to evidence related to the Newly Identified Kickbacks, Defendants assert that such evidence should be excluded because the Government failed to provide Defendants with sufficient notice of those purported kickbacks after promising, in January 2011, to do so within 30 to 45 days. As to evidence related to the Non–Hedge or Swap Kickbacks, Defendants maintain that such evidence would impermissibly expand Count One of the Superseding Indictment or could only be justified by an expansive reading of that count, which would render it unconstitutionally broad. Defendants argue that evidence in all three categories is irrelevant and should be excluded under FRE 403.

The Government responds that Defendants were put on actual notice of the Newly Identified Kickbacks as early as the beginning of 2010, when the Government turned over interview reports discussing transactions that involved the Newly Identified Kickbacks. The Government characterizes its statements to Defendants in January 2011 regarding the identification of kickbacks within 30 to 45 days as merely an expression of its then-prevailing expectation—not a binding promise. The Government further argues that evidence of Non–Hedge or Swap Kickbacks is relevant to the conspiracy charged in Count One, pointing to the plain language of that count, which is not limited to kickbacks associated with hedges or swaps. The Government asserts that the Non–Associated Kickbacks are relevant to charged conspiracies because Defendants arranged to receive kickbacks as the opportunity arose in the course of their business and kickbacks were not always directly and transparently linked to specific rigged transactions.

As to the Newly Identified Kickbacks, the Court agrees with the Government. There is no indication that the

Defendants ever followed up on the prosecutors' purported promise in January 2011 to provide final disclosure of all kickbacks to be presented at trial within 30 to 45 days. If the preparation of Defendants' trial strategy depended upon their knowing with certainty what kickbacks would be alleged at trial by sometime in February 2011, it is rather striking that at no point prior to the issuance of the BOP did Defendants remind the Government of its 30 to 45 day commitment. The Newly Identified Kickbacks were set forth in the BOP, which was timely issued by the Government under the endorsed case management plan, which the parties jointly submitted to the Court on February 16, 2011. (*See* Docket No. 104.) As Defendants have failed to persuade the Court that they suffered any substantial prejudice by the disclosure of the Newly Identified kickbacks under the case management plan to which they agreed, their motion to exclude evidence of the Newly Identified Kickbacks is DENIED.

██ Nor is the Court persuaded by Defendants' arguments as to the Non–Hedge or Swap Kickbacks and Non–Associated Kickbacks. Much like Defendants' effort to limit the proof at trial to transactions in which CDR served as named broker, this effort to circumscribe the allegations in Count One also fails. Count One, unlike other counts in the Superseding Indictment, is not limited to kickbacks associated with swaps or hedges. The relevant language of Count One accuses the conspirators of

> agreeing to pay and paying CDR kickbacks in the form of fees that were inflated, relative to the services performed, or unearned. These payments were in exchange for the CDR defendants' assistance in controlling the bidding process and for ensuring that certain co-conspirator providers won the bids they were allocated. Unlike the fees CDR was paid as a broker for conducting the bidding process, these fees were not disclosed to the municipalities that had hired CDR or the to the IRS[.]

(Superseding Indictment (Docket No. 67) ¶ 19(e).) The description of kickbacks in Count One is in no way limited to payments associated with hedges or swaps. Further, the terms of Count One do not require that every kickback paid be linked to a discrete transaction. Rather, kickbacks are alleged to have been paid "for conducting the bidding process" or "ensuring that certain co-conspirator providers won the bids they were allocated." (*Id.*) The Superseding Indictment put Defendants on notice of the Government's theory, reiterated in the Government's papers on these motions *in limine,* that the alleged conspiracy to restrain trade was a general scheme to control bidding processes and allocate successful bids across a wide array of transactions in return for kickback payments in the form of unearned or inflated fees, the nature of which were purposefully obfuscated and obscured. Because Count One is not limited to kickbacks associated with swaps or hedges and does not allege that each kickback was a direct response to a particular transaction, the presentation of evidence related to Non–Hedge or Swap Transactions and Non–Associated Transactions would not serve to expand the indictment. *See Rigas,* 490 F.3d at 228; *LaSpina,* 299 F.3d at 182.

Though the kickbacks at issue on these motions are within the scope of the conspiracies alleged, evidence of the kickbacks must still survive scrutiny under FRE 403. The relevance of these kickbacks will depend upon the strength of the evidence that the Government is able to adduce

demonstrating that the payments were, in fact, illicit kickbacks paid in exchange for the Defendants' bid rigging. It is premature to assess whether that relevance, to the degree that it is ultimately established at trial, is outweighed by the potential for delay, juror confusion or prejudice. Accordingly, Defendants motions *in limine* regarding the Newly Identified Kickbacks, Non–Hedge or Swap Kickbacks and Non–Associated Kickbacks are DENIED.

## X. *ORDER*

For the reasons discussed above, it is hereby

ORDERED that the Government's motion *in limine* (Docket No. 186), to allow cooperating witnesses to offer lay opinion testimony about recorded conversations involving their co-conspirators, is **DENIED without prejudice;** and it is further

ORDERED that the Government's motion *in limine* (Docket No. 192), to exclude evidence and argument suggesting the absence of criminal activity on transactions not referenced in the final bill of particulars, is **DENIED without prejudice;** and it is further

ORDERED that the Government's motion *in limine* (Docket No. 189), to limit the use of interview notes and interview summaries by the defense, is **DENIED;** and it is further

ORDERED that the Government's motion *in limine* (Docket No. 183), for notice regarding any advice of counsel defense and related pre-trial relief, is **DENIED;** and it is further

ORDERED that the motion *in limine* (Docket No. 208) of defendant David Rubin ("Rubin"), excluding evidence, testimony and argument pertaining to donations to political candidates, relationships with political consultants or officials, or characterizing Rubin's net worth, is **GRANTED in part and DENIED in part;** and it is further

ORDERED that the motion *in limine* (Docket No. 198) of defendants Rubin/Chambers, Dunhill Insurance Services, Inc. ("CDR"); Rubin; Zevi Wolmark a/k/a Stewart Wolmark; and Evan Andrew Zarefsky (collectively, "Defendants"), to exclude purported Rule 404(b) evidence, testimony and witnesses as identified on September 29, 2011, is **DENIED;** and it further

ORDERED that Defendants' motion *in limine* (Docket No. 200), to exclude all evidence, argument and testimony concerning deals not brokered by CDR, is **DENIED;** and it is further

ORDERED that Defendants' motion *in limine* (Docket No. 204), to preclude the Government from presenting argument, testimony or evidence that any of the alleged bidding conduct violated the Treasury regulations or was otherwise illegal per se, is **DENIED,** and it is further

ORDERED that Defendants' motion *in limine* (Docket No. 202), to exclude evidence, argument and testimony of the 286 alleged kickbacks newly identified on August 22, 2011, is **DENIED;** and it is further

ORDERED that Defendants' motion *in limine* (Docket No. 206), to limit the Government's evidence, argument and testimony in support of its kickback theory to payments associated with swaps or hedges and to deals identified in the bill of particulars, is **DENIED.**

**SO ORDERED.**